## Fratto et ux., Appellants, *v.* New Amsterdam Casualty Co.

Argued March 18, 1968; reargued January 20, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

138 

*James E. McLaughlin,* with him *Michael R. Stabile, Jr.,* and *McArdle & McLaughlin,* for appellants.

*Thomas Lewis Jones,* with him *Samuel P. Gerace,* and *White, Jones & Gregg,* for appellees.

OPINION BY MR. JUSTICE EAGEN, April 23, 1969:

On January 2, 1962, appellants' building was destroyed by fire. The building and its contents were insured under policies issued by various insurance companies, nine of which are the present appellees. In April of 1963 appellants commenced two actions in the United States District Court against other insurance companies not here involved, and on June 21, 1963, they instituted a third federal action against the nine companies before this Court today. All three federal actions were consolidated for trial. On June 7, 1965, the federal district court handed down an opinion allowing recovery for appellants on their two April 1963 claims, but dismissing the suit against appellees for failure to meet the federal jurisdictional amount. *Fratto v. Northern Ins. Co. of New York,* 242 F. Supp. 262 (W.D. Pa. 1965), affirmed sub nom., 359 F. 2d 842 (3d Cir. 1966). It appears that the federal court raised the jurisdictional issue sua sponte.

Upon learning that the federal court was going to dismiss its action against appellees, appellants, on June 24, 1965, commenced a state action in the Common Pleas Court of Allegheny County. Appellees asserted in new matter that this state court suit was untimely, citing a provision common to all the policies here involved: "SUIT. No suit or action on this policy for

the recovery of any claim shall be sustainable in any court of law or equity . . . unless commenced within twelve months next after inception of the loss." Since the loss occurred in 1962 and the present suit was not commenced until 1965, appellees moved for summary judgment under Pa. R. C. P. 1035. The motion was granted, hence this appeal.

It is the position of appellants that summary judgment should not have been granted since appellees are estopped from invoking the one year "statute of limitations" provision of the policies. Appellants contend that by expressly admitting the truth of appellants' allegation in their federal complaint that the suit satisfied federal jurisdictional requirements, appellees lulled appellants into believing that the claim would be finally settled in the federal forum. Therefore, by the time the federal court dismissed the suit, it was too late for appellants to commence a timely state action. The Frattos thus seek to place this controversy within the line of cases holding that "an insurer will not be permitted to take advantage of the failure of the insured to perform a condition precedent contained in the policy, where the insurer itself is the cause of the failure to perform the condition." *Arlotte v. National Liberty Ins. Co.*, 312 Pa. 442, 445, 167 A. 295, 296 (1933); *Fedas v. Insurance Co. of Pennsylvania*, 300 Pa. 555, 151 A. 285 (1930). Cf. *Deemer v. Weaver*, 324 Pa. 85, 187 A. 215 (1936).

Appellees counter this argument with the proposition that suits brought in a court without jurisdiction are but a nullity and therefore such an action cannot preclude appellees' later use of the otherwise valid policy statute of limitations in the present case. *Dalzell v. London and Lancashire Fire Ins. Co.*, 252 Pa. 265, 97 A. 452 (1916); *Miller v. Fulton*, 206 Pa. 595, 56 A. 74 (1903); *Hocking v. Howard Ins. Co.*, 130 Pa.

170, 18 A. 614 (1889) ; *Keystone Mut. Benefit Assoc. v. Norris*, 115 Pa. 446, 8 A. 638 (1887) ; *Roth v. Northern Assurance Co.*, 46 Ill. App. 2d 253, 196 N.E. 2d 389 (1964).

We conclude that the summary judgment against the appellants was proper, because the appellees had a perfect right, under legal and equitable principles, to raise the policy's period of limitations provision.

The legality of provisions in insurance contracts setting time limits upon the commencement of suits to recover on a policy is well established. *Lardas v. Underwriters Insurance Company*, 426 Pa. 47, 231 A. 2d 740 (1967). Neither is it disputed that the appellants' suit in the lower court was brought beyond the policy's limitation period.

The outcome here is controlled in all respects by the decision of this Court in *Hocking v. Howard Ins. Co.*, 130 Pa. 170, 18 A. 614 (1889). In *Hocking*, the plaintiff sued within the time limits of the policy, but, at trial, the company asserted that the action was premature (it having been commenced less than 60 days after plaintiff had filed with the company a statement. of loss in contravention of the policy provision giving the insurer a 60 day grace period). The trial court agreed and dismissed. plaintiff's action. His second suit was held untimely. On appeal, plaintiff argued that the insurer's failure to raise the prematurity defense in its answer in time to allow plaintiff to. commence a timely action after the 60 day period worked an estoppel of the company's right to invoke the one year statute of limitations in the second suit. This Court rejected that argument and said: "It is undoubtedly true that any act which tends to mislead the plaintiff, while parties are dealing on friendly terms, to avoid litigation, will be held to be evidence of a waiver of such a limitation as the present; *but after*

*suit has been brought, and the parties are dealing at arms' length, the rule does not apply with the same strictness, and much more positive evidence of actual misleading, if not intent to mislead, is necessary to prove a waiver by estoppel."* (Emphasis supplied.)

In the instant controversy, the appellants have a much weaker argument than that which this Court rejected in *Hocking.* For in *Hocking,* the company itself raised the defense which defeated the plaintiff's first action at the time when the new action would be untimely; here, it was the Federal District Court acting sua sponte, which pointed to the jurisdictional flaw that damned the appellants' suit. If "positive evidence of actual misleading" did not exist in *Hocking,* it hardly exists here. For the appellants have not demonstrated in a manner to preclude summary judgment against them, that the appellees knew of the jurisdictional defect in the appellants' suit, or knew that that court would ultimately dismiss the suit. In view of that barrenness in the appellants' case, we cannot conclude that the appellees smugly sat back, unconscionably looking at the calendar, and anxiously awaiting the day when the appellants' rights would have no remedy.

Quite apart from its persuasiveness as precedent, *Hocking* makes sense. If we were to allow the appellants to commence a new action, in contravention of the policy time-limit, and despite the lack of any convincing demonstration that the appellees purposely mislead the appellants, we would, in effect, be charging the appellees with the responsibility of discovering the mistakes made by the appellants. Even the law's general tendency to construe technical requirements in insurance contracts against the insurer cannot be distorted to allow that situation. Even in suits on insurance contracts, the processes of the law must gov-

·ern; even in suits on insurance contracts, enforceable rights can be lost through noncompliance with provisions limiting the time for bringing an action.

One more point requires observation. Even had the appellants demonstrated that the appellees acted purposefully in allowing an ill-fated suit to proceed to its own legal exhaustion in the federal courts, still, there is a question whether a suit would have been timely in the state courts if commenced at the same time as the federal suit; for even the federal suit was started beyond the contract's time limit.[1]

In an affidavit opposing the motion for summary judgment, appellants' counsel recites that this initial delay in the federal court was the result of negotiations with the company tending toward settlement. A finding that delay was caused by negotiations prompted the federal court to excuse appellants' lateness in their other two federal actions. However, the federal court never ruled on this delay, in spite of the fact that the appellees raised it in their federal court answer, since that tribunal dismissed on jurisdictional grounds. Since we hold that the appellees have not estopped themselves from the limitation defense, we need not decide this issue.

Judgment affirmed.

CONCURRING OPINION BY MR. JUSTICE COHEN:

I concur in the opinion of Justice EAGEN but feel compelled to comment on Justice ROBERTS' observation that "appellees' express admission of jurisdiction which caused appellants to continue their suit in the wrong forum thus preventing a timely action in the proper court" constitutes an equitable estoppel. I cannot find an "express admission" in a failure to contest

---

[1] As related above, the date of loss was January 2, 1962. Suit was not filed in the federal court until June 21, 1963.

jurisdiction, but, even if I could, the question whether "the matter in controversy exceeds the sum or value of $10,000" is not readily discernible and one's acquiescence or resistance to federal jurisdiction should not generate an estoppel. See, *Snyder v. Harris,* 394 U.S. 332, 37 L.W. 4262 (1969).

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

While I agree with the general principle relied upon by appellees that a suit brought in a court without jurisdiction is a mere nullity, I believe that appellants' position rests not so much upon the *existence* of the federal action as it does upon appellees' *reaction* to that federal suit. Appellants do not contend that the federal action tolled the statute, or that it worked a compliance with the policy. Rather, the Frattos contend that even if the federal action was a mere nullity and even if parties cannot confer subject matter jurisdiction upon a court which otherwise has no such jurisdiction, nevertheless it was appellees' *express admission of jurisdiction which caused appellants to continue their suit in the wrong forum thus preventing a timely action in the proper court.* It is on this equitable principle of estoppel, not on the legal effect of the federal suit itself, that appellants rest their case.

Viewed in this perspective, the present controversy is easily distinguishable from *Miller v. Fulton,* 206 Pa. 595, 56 Atl. 74 (1903); *Keystone Mut. Benefit Assoc. v. Norris,* 115 Pa. 446, 8 Atl. 638 (1886); *Roth v. Northern Assurance Co.,* 46 Ill. App. 2d 253, 196 N.E. 2d 389 (1964). In *Keystone,* there was *no allegation* that the insurance company in any way *lulled* plaintiff into continuing its first suit in the wrong court. In *Miller,* the trial court itself *apparently cautioned plaintiff* that he might be in the wrong forum. And in *Roth,* the *insurance company promptly moved* for

dismissal of the federal action on jurisdictional grounds. Thus, all three cases comport with the general notion that a party ought not be able to plead his own conduct as an excuse for failing to comply with a statute of limitations. See *Lardas v. Underwriters Ins. Co.*, 426 Pa. 47, 231 A. 2d 740 (1967).

*Dalzell v. London and Lancashire Fire Insurance Company*, 252 Pa. 265, 97 Atl. 452 (1916) and *Hocking v. Howard Insurance Co.*, 130 Pa. 170, 18 Atl. 614 (1889), however, are practically indistinguishable from the present case. In my view these cases are inconsistent with basic notions of justice especially in this area of technical requirements in insurance contracts and should therefore no longer represent the law of this Commonwealth. In *Dalzell* the insured instituted his action in the state court only to have it removed at the insistence of defendant insurance company to the federal court. When the federal court finally decided that it lacked jurisdiction over the controversy, plaintiff was held barred by the one year policy statute of limitations from commencing a new suit in the state forum. It should be only too obvious that this decision flies against every conceivable notion of logic and justice. It was, I believe, incorrect when decided and I would overrule it with no hesitancy whatsoever.

*Hocking*, however, presents a more difficult problem. In that case plaintiff insured brought his first action well within the time limits of the policy. At trial, however, the company for the first time asserted that the action was premature (it having been commenced less than 60 days after plaintiff had filed with the company a statement of loss in contravention of the policy provision giving the insurer a 60 day grace period). The trial court agreed and dismissed plaintiff's action. His second suit was held untimely. On appeal, plaintiff argued that the insurer's failure to raise

the prematurity defense in its answer in time to allow plaintiff to commence a *timely* action after the 60 day period worked an estoppel of the company's right to invoke the one year statute of limitations in the second suit. This Court rejected that argument, holding that the estoppel notion has no effect after the parties commence legal action, since then both sides are deemed to be at arms' length.

On reflection, however, I believe that this "arms' length" solution is too simplistic, for the notion of the arms' length transaction still requires that the "arm" holding a boxing glove, rather than a mace. Dilatory tactics such as those apparently used by the insurance company in *Hocking* have never been favored in the law. And in this regard it should not matter whether the parties have commenced suit, or not. Both in *Hocking* and in the present case, the insurance company *had* a complete defense to the first lawsuit. In both cases this defense was raised *so late* in the proceedings that the insured found himself *unable* to begin anew in the proper court or (as in *Hocking*) after the proper 60 day period. Moreover, the case now before us in large measure presents an even more appealing fact pattern than *Hocking*. Appellees *expressly admitted federal jurisdiction here.* They were more than willing to try this case in the federal courts on the *merits.* However, by the federal court's own act appellees found themselves out of that forum unscathed. They now attempt to reap *a complete windfall* from this turn of events by invoking the one year statute of limitations.

In my view, the better result in cases of this sort is that reached by the court in *Bollinger v. National Fire Ins. Co. of Hartford,* 25 Cal. 2d 399, 154 P. 2d 399 (1944) (TRAYNOR, J.), a case on all fours with *Hocking* except in result. There, just as in *Hocking,*

the first suit was commenced prematurely and the second beyond the applicable period of limitations. Yet the court refused to allow the company to invoke the statute, holding that by delaying the first suit beyond the contractual period and then raising the prematurity defense for the first time, the insurer could not then take advantage of the statute of limitations provision. The California court said simply: "Under the circumstances it would be a perversion of the policy of the statute of limitation to deny a trial on the merits." Id. at 406, 154 P. 2d at 403.

It has been long established in Pennsylvania that where an insured commences his lawsuit beyond the statutory period, the company may not defend on this ground when the insured's delay was itself induced by the company. For example, in *Arlotte v. National Liberty Ins. Co.*, 312 Pa. 442, 167 Atl. 295 (1933), the insured's dwelling was destroyed when it was hit by a truck. Since all the parties assumed that the insured's copy of the policy had been destroyed in the ensuing fire, the company agent erroneously told the insured that the policy did not cover this sort of damage. After the one year period had expired, the insured found the policy among his belongings, discovered that truck damage was covered, and commenced his suit. We held the company estopped from raising the statute of limitations. I see no reason not to extend this fair and equitable rule to cases such as the present one, where appellants' continuation of a suit in an improper court was *encouraged* by appellees' *express agreement* that that Court was the proper forum. Just as in the truck case, appellee *could* have discovered their error by themselves; but this did not move us in *Arlotte*, and in my view should not move us here. When the company, by its action, sets in motion the events leading to an insured's eventual noncompliance

with a policy provision, the company must not be permitted to defeat a claim by invoking that provision.

There remains, however, one more fly in the ointment of this case's resolution. Appellants' theory must, of course, rest on the fact that a timely state court action *could* have been brought had the company promptly raised the issue of jurisdiction in the federal forum. In this regard, therefore, I am troubled by the fact that this record conclusively shows that appellants' federal action was itself brought in June, 1963, a full year and a half after the fire. In an affidavit opposing the motion for summary judgment, appellants' counsel recites that this initial delay in the federal court was the result of negotiations with the company tending towards settlement. A finding that delay was caused by negotiations prompted the federal court to excuse appellants' lateness in their other two federal actions. However, the federal court never ruled on this delay, in spite of the fact that appellees raised it in their federal court answer, since that tribunal dismissed on jurisdictional grounds. Moreover, the court below also failed to rule on the federal court delay since it no doubt believed this issue irrelevant.

I do not regard the issue as irrelevant, for if the federal suit itself was *not* timely, then appellees are entitled to a judgment in their favor. If, on the other hand, the court below were to find that the initial delay in filing the federal action was excused by the company's willingness to attempt a negotiated settlement, then I believe appellants may proceed to trial. Appellants' affidavit opposing the motion for summary judgment states that settlement negotiations account for their failure to file the federal court action within one year, a statement not denied by appellees. This affidavit places in issue the factual question of what caused the apparent lateness of the federal action thus

creating a material issue of fact sufficient to withstand the motion for summary judgment. That appellees have not denied the statements contained in appellants' affidavit, however, should not, in our opinion, operate to appellees' prejudice, given the fact that until today the parties may well have regarded the timeliness of the federal suit as irrelevant. Thus, I believe that this case should be remanded in order for the court below to decide whether appellants' tardy commencement of their federal court suit was excusable.

I dissent.

Mr. Justice O'BRIEN joins in this dissenting opinion.