Commonwealth of Pennsylvania, Plaintiff, *v.* Transamerica Insurance Company, Defendant.

Argued January 7, 1974, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Judge CRUMLISH, JR., did not participate.

*Richard J. Orloski,* Deputy Attorney General, for plaintiff.

*William E. Miller, Jr.,* with him *Heath L. Allen* and *Metzger, Hafer, Keefer, Thomas and Wood,* for defendant.

OPINION BY JUDGE KRAMER, March 8, 1974:

This case comes within the original jurisdiction of this Court. It was commenced by the filing of a com-

plaint in assumpsit filed by the Commonwealth of Pennsylvania (Commonwealth) on May 13, 1971 praying for judgment in the amount of $10,000, plus interest and costs, against the Transamerica Insurance Company (Transamerica). The Commonwealth alleges that Transamerica is liable under the terms of a bond (entitled Public Employe Faithful Performance Blanket Position Bond) issued by Transamerica's predecessor company to become effective July 1, 1963. In the record before us, which consists of the pleadings, a stipulation of facts and a deposition, we find the following pertinent facts. The bond in question was intended to indemnify the Commonwealth against any loss or losses, up to a maximum of $10,000, caused to the Commonwealth during the term of the bond through the failure of certain Commonwealth employees to faithfully perform duties or to properly account for all monies and property received by virtue of their position. The Commonwealth paid the full premium for this surety bond coverage for the period July 1, 1963 through August 25, 1967.

The bond contains a provision limiting the time during which suit may be brought on the bond. That provision reads as follows: "Section 6. No suit, action or proceeding of any kind to recover on account of loss under this bond shall be brought after the expiration of three years from the cancellation of this bond as an entirety, provided, however, that if such limitation for bringing suit, action or proceeding is prohibited or made void by any law controlling the construction of this bond, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law." The expiration date of the bond was August 25, 1967. During the period of the coverage of the bond, an employe of the Commonwealth (John P. Davis) embezzled an amount in excess of $10,000 from the Commonwealth. Davis pleaded

guilty to the charge and admitted to embezzling at least $85,000 from the Commonwealth during his course of employment as a revenue agent. Even before it was certain that its employe had committed embezzlement, the Commonwealth on November 4, 1968, advised Transamerica of its possible bond claim. On November 15, 1968, Transamerica requested the results of the Commonwealth's investigation in connection with this possible bond claim. On December 2, 1968, the Commonwealth advised Transamerica that the results of its investigation could be had through the Commonwealth's investigators; and Transamerica's agents did contact them. On March 28, 1969, Davis was arrested for embezzlement. On April 16, 1969, Transamerica mailed proof of loss forms to the Commonwealth. In early May of 1969, a preliminary hearing was conducted on the embezzlement case; and on May 22, 1969, Davis pleaded guilty to the criminal charge of embezzlement. On August 28, 1969, the Commonwealth mailed its proof of loss forms to Transamerica claiming a loss during the bond coverage in the amount of $48,094.11. On October 17, 1969, the Commonwealth forwarded a copy of its investigation in order to complete the executed proof of loss forms. On November 24, 1969, Transamerica requested further information, at which point in time Transamerica was not satisfied as to the validity of the Commonwealth's claim. On November 26, 1969, the Commonwealth advised Transamerica that it had all of the written reports available, and suggested that Transamerica send its agents to examine the Commonwealth's files. In December of 1969 and early January 1970, Transamerica sent a claims adjuster to review the Commonwealth's files in the matter. Prior to May 8, 1970, the bonds claim attorney for Transamerica instructed the claim adjuster for Transamerica to obtain copies of checks compiled by the Commonwealth's investigators for use in

the embezzlement charge. On May 8, 1970, the Commonwealth delivered copies of the requested checks to Transamerica's agents. In June or July of 1970, Transamerica requested that the Commonwealth supply copies of the back side of the checks and these were delivered. On August 5 and 6, 1970, Transamerica's agents visited the Commonwealth's investigators and spent two days examining the Commonwealth's files in the case. After August 6, 1970, but certainly before August 25, 1970, the expiration of the three-year period, the bonds claim attorney for Transamerica decided that Transamerica would not honor the claim of the Commonwealth. The Commonwealth was never advised of this decision. On October 27, 1970, the Commonwealth wrote to Transamerica requesting information on the status of its claim. This letter was never answered by Transamerica. In November of 1970, Transamerica's agent orally advised an agent of the Commonwealth in a telephone conversation that the claim would not be honored. On May 4, 1971, a deputy attorney general of the Commonwealth wrote two letters to Transamerica requesting payment on the bond. Thereafter, a conference was held between agents of the Commonwealth and Transamerica for the purpose of conciliation and negotiation wherein Transamerica made an offer of partial payment in the amount of $5,000 in full settlement of the $10,000 claim. The Commonwealth declined this negotiated offer of settlement. It should be noted here that there is nothing in the record which would indicate that at any time any agent of Transamerica ever indicated to the Commonwealth that the claim would be honored or paid, even at the settlement conference in May of 1971. There is nothing in the record which would establish that Transamerica believed that the Commonwealth's claim should be paid. As stated herein-

before, the Commonwealth filed suit in this Court on May 13, 1971.

After preliminary objections of Transamerica were overruled, an answer was filed and the issues struck. A deposition was taken of the bonds claim counsel of Transamerica, and on October 16, 1973, the Commonwealth filed a motion for summary judgment. Thereafter, Transamerica filed its motion for summary judgment pursuant to Pa. R. C. P. No. 1035, and on November 28, 1973, the Commonwealth and Transamerica moved for consolidation of argument on the two motions for summary judgment.

Pa. R. C. P. No. 1035 (b) provides that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of proving that there is no material issue of fact and the record must be examined in a light most favorable to the nonmoving party. *Toth v. Philadelphia*, 213 Pa. Superior Ct. 282, 247 A. 2d 629 (1968); *Schacter v. Albert*, 212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968). In this case both parties have filed for summary judgment and both agree that the facts are not controverted.

There being no real dispute as to the facts, the very narrow issue facing us is whether the Commonwealth is barred from recovery under the bond containing the quoted provisions of paragraph 6 limiting suit during the contractual period of three years from the date of cancellation of the bond, or whether Transamerica through its actions waived this contractual limitation, thereby permitting recovery.

While frankly admitting that it filed suit more than eight months beyond the contractual limitation

on such filing, the Commonwealth contends that Transamerica waived the limitation by its conduct as disclosed by the facts stated above. The Commonwealth relies heavily upon the case of *McMeekin v. Prudential Insurance Company of America*, 348 Pa. 568, 36 A. 2d 430 (1944). In *McMeekin*, the insurance claimant waited more than 11 years before bringing suit and the insurance company defended on the statute of limitations as a bar to the claim. Our Supreme Court affirmed the lower court's verdict in favor of the insured claimant, but it did so for reasons not found in this case. In *McMeekin* the insurance company agent requested the claimant for more time to ascertain the total benefits due. The insurance company agent made representations that the benefits would be paid eventually. After requesting this additional time, the company never notified the claimant that his claim had been rejected. Based on these facts, our Supreme Court in *McMeekin* concluded: "Since the failure of the insured to proceed was due directly to the request of the company for indulgence and the company's representations that it was investigating the claim, the company itself was the cause of nonperformance on the part of the insured and it cannot prevent recovery on the ground of such nonperformance." 348 Pa. at 571-572, 36 A. 2d at 431-432. At another place, the *McMeekin* court said: "If in the course of the negotiations the company gave the plaintiff reasonable grounds for believing that the time limit would be extended or that such provision would not be strictly enforced, it could not subsequently insist on its strict enforcement without giving him a reasonable time thereafter to bring his action." 348 Pa. at 572, 36 A. 2d at 432. In this case, there is no evidence that Transamerica asked for additional time or ever indicated that the Commonwealth's claim was valid or that it

would be paid. The Commonwealth also cites *Fedas v. Insurance Company of the State of Pennsylvania,* 300 Pa. 555, 151 A. 285 (1930) and *Gough v. Halperin,* 306 Pa. 230, 159 A. 447 (1932) where our Supreme Court held that contractual limitations of action may be waived where the insurance company by its conduct lulls the insured into a sense of security that the matter will be fairly resolved. These two cases are inapposite for the reason that the Supreme Court took careful pains to point out that there must be some act on the part of the insurance company or its agents which causes the insured to believe that it will not be necessary to perform some duty required by the contract. We have no such facts in this case. It is entirely conceivable under the facts of this case that the agents of Transamerica with forethought intentionally did not make any such commitment or misleading statements; and that they set out on a course to investigate this case through a point of time beyond which the contract permitted the filing of a lawsuit. We do not condone the business practice performed by bonds claim counsel of Transamerica in deciding to deny the claim between August 6, 1970 and August 25, 1970 without giving the Commonwealth the benefit of such knowledge. It seems to us that any business man desirous of obtaining the good will of his customer and interested in additional insurance and bond business would have given the Commonwealth notice of his decision. Unfortunately we do not decide cases on good or bad business practice. We are bound to decide cases on the law. As we read the cases, we must find somewhere in the record some action, statement or direction by the insurance company, its agents, servants or employees upon which the Commonwealth relied before we are permitted to infer a waiver of the contracual period of limitation.

A similar question was more recently presented in *Fratto v. New Amsterdam Casualty Co.,* 434 Pa. 136, 252 A. 2d 606 (1969) where the insured claimant improperly filed suit in the federal courts, which dismissed same for failure to meet the federal jurisdictional amount. Upon filing a new lawsuit in the state court, but now subsequent to the time of the contractual provision limiting the filing of such a lawsuit to within twelve months after the inception of the loss, our Supreme Court upheld a lower court holding that the insurance company was not estopped from raising the contractual limitation as a defense. While recognizing the principle that such limitation clauses may be waived where the insurance company itself is the cause for the failure to perform the condition by the claimant, the court in *Fratto, supra,* stated: "If we were to allow the appellants [the insured claimants] to commence a new action, in contravention of the policy time-limit, and despite the lack of any convincing demonstration that the appellees [insurance company] purposely mislead the appellants, we would in effect, be charging the appellees with the responsibility of discovering the mistakes made by the appellants. Even the law's general tendency to construe technical requirements in insurance contracts against the insurer cannot be distorted to allow that situation. Even in suits on insurance contracts, the processes of the law must govern; even in suits on insurance contracts, enforceable rights can be lost through noncompliance with provisions limiting the time for bringing an action." 434 Pa. at 141-142, 252 A. 2d at 608. In all of these cases we have reviewed, including *Hocking v. Howard Ins. Co.,* 130 Pa. 170, 18 A. 614 (1889), the courts have consistently upheld the contractual time limitations, unless some act of the insurance company misleads or lulls the insured into be-

lieving that his claim would somehow be honored, or the time limitation waived. The general rule is that a time limitation provision in an insurance policy which specifies a reasonable time within which an action must be brought on the policy is valid and enforceable; and recovery under the policy will be denied if an action is not brought within the time specified. See *Fratto, supra; Lardas v. Underwriters Insurance Company,* 426 Pa. 47, 231 A. 2d 740 (1967) and *Ercole v. Metropolitan Life Insurance Co.,* 155 Pa. Superior Ct. 549, 39 A. 2d 293 (1944).

Our very careful review of the record before us permits us to conclude that Transamerica did not take any action nor did it make any statements which would have lulled the Commonwealth into a belief that its claim would be paid. We also conclude that Transamerica took no action which might have led the Commonwealth to believe that the three year limitation in the contract would be waived. There was nothing done by Transamerica which would have prevented the Commonwealth in any way from bringing a lawsuit within the three-year period. Having reached this conclusion, we must

## ORDER

AND Now, this 8th day of March, 1974 the motion of the Commonwealth of Pennsylvania for summary judgment is denied; the motion for summary judgment filed by Transamerica Insurance Company is hereby granted; and it is hereby ordered that the complaint filed at the above number and term is dismissed with costs to the Commonwealth.