EVANS PRODUCTS CO. and Home Builders Mortgage Corp., Appellees,

v.

WEST AMERICAN INSURANCE CO., Appellant.

No. 83–1374.

United States Court of Appeals, Third Circuit.

Argued Feb. 28, 1984.

Decided June 18, 1984.

Michael P. McKenna (argued), Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., for appellant.

Alan Jay Josel (argued), Menin, Flick & Josel, Norristown, Pa., for appellee.

Before ADAMS and SLOVITER, Circuit Judges, and TEITELBAUM,* District Judge.

## OPINION OF THE COURT

TEITELBAUM, Chief Judge.

### I

This is an appeal from a judgment entered for Evans Products Co. and Home Builders Mortgage Corp. (Evans) and against West American Insurance Co. (West) in an action on an insurance contract. For the reasons set forth below, we vacate and remand for further proceedings.

### II

Steven and Patricia Brooks had obtained a homeowners' insurance policy from West with a loss-payable clause in favor of Evans as mortgagee. The policy provided fire-loss coverage on the dwelling in the maximum amount of $43,000, on personal property in the maximum amount of $21,500, and on loss of use in the maximum amount of $5,600.

A fire subsequently occurred at the Brooks' residence on May 20, 1980. The Brooks' proof of loss statement, claiming $64,500 for total loss of the dwelling and damage to personal property, was rejected

---

* The Honorable Hubert I. Teitelbaum, Chief Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

by West. An Action in Assumpsit against West subsequently was brought by the Brooks in the Court of Common Pleas of Westmoreland County, Pennsylvania on December 30, 1980. In this action, the Brooks sought recovery for both the real and personal property losses.

Evans then executed and returned a proof of loss statement to West on August 4, 1981. Evans' statement, claiming $43,-000 for total loss of the dwelling, also was rejected, whereupon it brought a diversity action in federal district court on December 15, 1981 seeking to recover under the loss-payable clause of the insurance policy.[1]

On October 14, 1982, while a decision on the merits of the action in federal court was pending, West settled the Brooks' state court action and paid them $7,000 for loss of personal property only. Evans and West subsequently submitted the action below for resolution of the case stated without a jury on the basis of stipulated facts and accompanying memoranda of law. Judgment was entered for Evans.

### III

Evans initially sought to recover in the complaint on the theory that it had complied with all conditions precedent to recovery. West denied in its answer that Evans had complied with all conditions precedent to recovery and defended on the theory that Evans' suit was barred for failure to comply with a provision in the insurance contract that any action against West be brought within one year.[2]

Evans subsequently revised its theory of recovery in its memorandum of law submitted for resolution of the case stated. It contended that it was entitled to recover under the loss-payable clause, despite its failure to bring suit within the required period of time. Specifically, Evans sought recovery on the theory that, under Pennsylvania law, a claimant failing to comply with all the conditions of the policy is barred from recovering only upon a showing by the insurer that it had been prejudiced by the failure to comply. Evans maintained that no such showing of prejudice had been made by West.

West also revised the theory on which it defended in its memorandum of law submitted for resolution of the case stated. West maintained therein that the Pennsylvania Supreme Court had rejected the theory put forth by Evans. An insurer, it argued, does not bear the burden, under Pennsylvania law, of showing any prejudice to itself in order to bar recovery under

---

1. The clause in question reads as follows:

   12. Mortgage Clause.

   The word "mortgagee" includes trustee.

   If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

   If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

   a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware:

   b. pays any premium due under this policy on demand if you have neglected to pay the premium;

   c. submits a signed, sworn statement of loss 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

   If we pay the mortgagee for any loss and deny payment to you:

   a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

   Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

2. The provision in question reads as follows:

   8. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the occurrence causing loss or damage.

a policy of insurance for failure to comply with conditions set forth in the policy.

The district court ruled that the failure of Evans to comply with the requirement that action be brought within one year did not bar recovery by Evans. It held that Evans was entitled, by virtue of the loss-payable clause, to rely upon the action by the Brooks in state court as protecting its interest. West then was found in breach of that obligation to Evans when it settled with the Brooks on October 14, 1982.

The basis upon which relief was granted to Evans was an event which occurred more than seven months *after* West had answered the complaint—*i.e.*, the settlement on October 14, 1982 of the Brooks' state court action against West. Evans neither amended nor supplemented its complaint to cite this particular event as providing a basis for the relief sought. West made no reference to it in its answer. Moreover, this particular event neither had been cited by Evans as providing a basis for relief nor had been opposed by West in their memoranda submitted for disposition on the merits.

The district court apparently was cognizant that the relief granted to Evans was based on a consideration not addressed by the parties. It held, however, that this did not matter because:

> Plaintiff would be permitted to amend its Complaint in the present action to assert that the defendant breached its obligations under the loss-payable endorsement by making settlement directly with the owners, without protecting plaintiff's interests.

## IV

■ Adherence to the rigid theory-of-the-pleadings doctrine has been abolished by the Federal Rules of Civil Procedure. A court is not limited to granting relief to a party solely on the basis of theories of recovery set forth in the pleadings. For instance, Fed.R.Civ.P. 54(c) requires that the judgment entered shall grant the relief to which a party is entitled, even when such relief was not demanded in the pleadings.

Not unexpectedly, Fed.R.Civ.P. 54(c) has been used to grant relief based on theories of recovery different from those theories set forth in the pleadings. For instance, an insurance policy may be reformed in an action seeking a declaration of nonliability, *Metropolitan Casualty Ins. Co. of New York v. Friedley*, 79 F.Supp. 978 (N.D. Iowa 1948). Specific performance of a contract may be awarded on a claim seeking cancellation and rescission. *Garland v. Garland*, 165 F.2d 131 (10th Cir.1947). Recovery, based on a theory of quantum meruit[3] or on a theory of unjust enrichment,[4] or on the principle of contribution[5] may be allowed in an action instituted for breach of contract. Recovery may be granted for breach of contract even though the complaint alleges only a tort.[6] *See, in general*, 10 Wright, Miller and Kane, Federal Practice and Procedure § 2664 at 163169 (1983).

■ This does not mean, however, that there are no restrictions on the relief that may be granted under Fed.R.Civ.P. 54(c). What a court may do ultimately is limited by fundamental notions of due process and fair play. *Sylvan Beach, Inc. v. Koch*, 140 F.2d 852, 861–862 (8th Cir.1944). Fed.R.Civ.P. 54(c) permits relief based on a particular theory of relief only if that theory was squarely presented and litigated by the parties at some stage or other of the proceedings. *Cioffe v. Morris*, 676 F.2d 539, 541 (11th Cir.1981). Put another way, relief may be based on a theory of recovery only if the theory was presented in the pleadings or tried with the express or implied

---

**3.** *First National Bank of Hollywood v. American Foam Rubber Corp.*, 530 F.2d 450, 453 n. 3 (2d Cir.1976).

**4.** *Matarese v. Moore-McCormack Lines, Inc.*, 158 F.2d 631 (2d Cir.1946).

**5.** *Spaulding v. Parry Navigation Co.*, 90 F.Supp. 567 (S.D.N.Y.1950), *rev'd on other grounds*, 187 F.2d 257 (2d Cir.1951).

**6.** *Thomas v. Pick Hotels Corp.*, 224 F.2d 664, 666 (10th Cir.1955).

consent of the parties. *Monod v. Futura, Inc.*, 415 F.2d 1170, 1174 (10th Cir.1969).

When relief is based on a theory of recovery not raised in the pleadings, the requirements of Fed.R.Civ.P. 15(b) may come into play. *Cioffe*, 676 F.2d at 541. Fed.R.Civ.P. 15(b) requires that unpled issues which are tried with the express or implied consent of the parties are to be treated as if they were raised in the pleadings. The court shall permit the pleadings to be amended to conform to the evidence offered when the presentation of the merits of the action will be subserved and the opposing party will not thereby be prejudiced.

The primary consideration in determining whether leave to amend under Fed.R.Civ.P. 15(b) should be granted is prejudice to the opposing party. *See United States v. Hougham*, 364 U.S. 310, 315, 81 S.Ct. 13, 17, 5 L.Ed.2d 8, 13 (1960). The principal test for prejudice in such situations is whether the opposing party was denied a fair opportunity to defend and to offer additional evidence on that different theory. *Universe Tankships, Inc. v. U.S.A.*, 528 F.2d 73, 76 (3d Cir.1975); *see also Cioffe*, 676 F.2d at 542. The propriety of granting leave to amend under Fed.R.Civ.P. 15(b) and of granting relief under Fed.R.Civ.P. 54(c) depend on basically similar considerations.

As was pointed out, the theory of recovery on which relief was granted to Evans had not been raised by the time the pleadings had closed. The event cited as giving rise to the breach by West did not occur until more than seven months after West had answered the complaint.

It also is clear that neither party *expressly* raised the issue whether the settlement of the state court action between the Brooks and West constituted a breach of an obligation West owed to Evans by virtue of the loss-payable endorsement. This matter evidently was raised *sua sponte* by the district court.

As was pointed out previously, judgment was entered on the basis of stipulated facts submitted by the parties. One such stipulated fact was the settlement agreement between the Brooks and West on October 14, 1982. This particular stipulation does not indicate that the parties *implicitly* consented to litigation of the question whether such settlement constituted a breach on the part of West. Rather, it was intended by the parties to bear only on the questions whether, under Pennsylvania law, the burden is on the insurer to show that it was prejudiced by the failure of the mortgagee to bring suit within the prescribed time period and, if it does, whether West in fact had been prejudiced.

The theory on which relief was granted to Evans had neither been raised in any of the pleadings nor been litigated with either the express or implicit consent of the parties. West therefore was denied a fair opportunity to defend against the theory that it had breached its obligation to Evans by virtue of the settlement with the Brooks on October 14, 1982. The relief granted by the district court thus was improperly granted because the theory upon which it was based had not been squarely presented and litigated at any stage of the proceedings and because West thereby had been prejudiced. *See Cioffe*, 676 F.2d at 541.

As was pointed out, the district court may, under Fed.R.Civ.P. 15(b), permit amendments to conform to the evidence only if an issue has been tried with the express or implied consent of the parties and the opposing party will not thereby be prejudiced. Because the issue in question had not been tried with the express or implied consent of the parties and West thereby was prejudiced, amendment under Fed.R.Civ.P. 15(b) would be improper.

This case is remanded to permit the district court to consider allowing Evans to amend its complaint. If, however, the district court does permit Evans to amend its complaint to include the above claim for breach, West then may answer and shall have fair opportunity to defend against that theory and to present further evidence in its defense.

ADAMS, Circuit Judge, dissenting.

For over sixty years, Pennsylvania has by statute required that all fire insurance contracts include the following provision:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity ... unless commenced within twelve months next after inception of the loss.

40 Pa.Stat.Ann. § 636 (Purdon 1971).[1] By choosing a one-year deadline, rather than the six-year statute of limitations ordinarily applicable to suits on a written contract, 42 Pa.Cons.Stat. § 5527 (1982),[2] the Pennsylvania legislature expressed its judgment that claims for fire insurance coverage should be asserted with special promptness.[3] Despite frequent challenge, the validity and strict application of this one-year limitations period have been repeatedly upheld by the Pennsylvania Supreme Court. *Schreiber v. Pa. Lumberman's Mut. Ins. Co.,* 498 Pa. 21, 444 A.2d 647 (1982); *General State Auth. v. Planet Ins. Co.,* 464 Pa. 162, 346 A.2d 265 (1975); *Fratto v. New Amsterdam Cas. Co.,* 434 Pa. 136, 252 A.2d 606 (1969); *Lardas v. Underwriters Ins. Co.,* 426 Pa. 47, 231 A.2d 740 (1967).

Nonetheless, in the diversity case before us, admittedly governed by Pennsylvania law, the district court concluded that a delinquent action on a fire insurance policy was not barred. Evans Products Co. and Home Builders Mortgage Corp. (Evans) clearly failed to comply with the one-year limitations period, filing suit against West American Insurance Co. (West) almost seven months after the deadline. Although the majority does not hold that Evans' lateness should have been excused, it remands this case for additional litigation of the rationale devised by the district court to save the action, a rationale that is unsupported by the proof adduced at trial and inconsistent with controlling Pennsylvania law. Because neither Evans nor the district court has offered any reason that would, under Pennsylvania law, exempt Evans from the one-year time limit, I believe it is inappropriate to remand this case for further proceedings; I must therefore respectfully dissent.

## I.

On May 20, 1980, a fire damaged the home and belongings of Steven and Patricia Brooks. By mid-October 1980, the Brookses had mailed a proof-of-loss statement to their insurance agent, claiming over $64,500 in damage to their real and personal property. This claim was rejected. Seeking payment under their insurance contract, the Brookses filed an action in assumpsit against West in Pennsylvania state court on December 30, 1980. The lawsuit, however, never came to trial. In exchange for a $7,000 payment, the Brookses agreed on October 26, 1982 to "release and forever discharge" West from any liability "connected with fire damage to furnishings and other contents of [the Brookses'] dwelling as a result of the fire occurring May 20, 1980." App. at 148a. The release agreement further specified that it "include[d] settlement and discontinuance of the [Brookses'] lawsuit." *Id.* The agreement makes no mention of any payment for damage to the Brookses' real property.

In the meantime, the Brookses' mortgagee, Evans, had been notified of the fire three weeks after it occurred in a letter from an insurance agent dated June 12, 1980. Evans tendered no proof-of-loss

---

1. The predecessor of this provision was included in the Act of May 17, 1921, P.L. 682, Art. V, § 522. Although re-enacted many times since 1921, the text of this provision today remains essentially the same as in the original legislation.

2. When a Pennsylvania fire insurance contract omits the one-year provision, the six-year limitations period controls. *Marshall v. Aetna Cas. & Sur. Co.,* 643 F.2d 151 (3d Cir.1981).

3. The Pennsylvania Supreme Court recently observed that this one-year limitation on suits "represents a legislative determination of a reasonable period within which suits must be brought, a careful balancing of the interests of both insurers and insureds." *Schreiber v. Pa. Lumberman's Mut. Ins. Co.,* 498 Pa. 21, 25, 444 A.2d 647, 649 (1982).

statement, however, until August 4, 1981, approximately 14½ months after the fire, and filed no lawsuit against West until December 15, 1981, almost 19 months after the fire.

The insurance contract on which Evans sued West is a typical homeowners "umbrella" policy covering *inter alia* fire damage to the Brookses' real and personal property. The policy also includes a standard mortgage clause extending protection to a mortgagee for damages to its interest in the Brookses' dwelling and other structures. The mortgage clause explicitly states that "[p]olicy conditions relating to ... Suit Against Us [West] ... apply to the mortgagee." App. at 31a. Under the heading "Suit Against Us," the insurance contract provides that "[n]o action shall be brought unless ... the action is started within one year after the occurrence causing loss or damage." *Id.*

Throughout these proceedings, West has pressed only one defense: that Evans' suit is barred by the one-year limit in the insurance policy. Because West and Evans tried this case on a stipulated record, including the stipulation that Evans sustained a loss of $24,733.30, the entire case turns on the applicability of the one-year limitations period set forth in the insurance policy. If Evans' action is not time barred, then it should receive $24,733.30. If Evans' action is time barred, then it should receive nothing.

Without citing any authority, the district court determined that the one-year deadline did not bar Evans' lawsuit. The court's analysis consisted of the following statement:

In my view, the following circumstances combine to preclude [West] from asserting the limitations defense in this action: (1) a timely suit was in fact filed by the named insureds [the Brookses]; (2) by virtue of the loss-payable endorsement [Evans] had the right to rely upon that action as protecting its interests; (3) [West] was aware of [Evans'] status as mortgagee and loss-payee; and (4) so far as the record discloses, [Evans] was not

informed of, and did not consent to, the termination of the [state court] litigation. The most that can be said for [West's] position is that it would perhaps have been technically preferable had [Evans] sought intervention in the [state court] suit, rather than bringing this action. But even accepting that contention, the ultimate outcome would be the same. [Evans] would be permitted to amend its Complaint in the present action to assert that [West] breached its obligations under the loss-payable endorsement by making settlement directly with the owners, without protecting [Evans'] interests.

*Evans Products Co. v. West Am. Ins. Co.,* No. 81–5126, slip op. at 6 (E.D.Pa. Apr. 19, 1983). Having thus resolved the one contested issue in the case in favor of Evans, the district court entered judgment for Evans in the amount of $24,733.30.

The majority opinion does not pass on the merits of the legal theory that was adopted by the district court to salvage Evans' lawsuit. Rather, the majority holds that this case should be remanded because the district court relied on a theory that was neither pleaded nor argued. Contrary to the majority, I am persuaded that we may not avoid the underlying legal issue in this case—the applicability of the statutorily mandated one-year limitations provision. It is squarely presented to us and, I believe, we are required to decide it.

## II.

The fundamental flaw in the district court opinion is its failure to recognize that a mortgagee and a mortgagor hold two separate agreements with the insurance company. Under Pennsylvania law, the standard mortgage clause in a homeowner's fire insurance policy creates a separate, distinct and independent contract of insurance in favor of the mortgagee. *Overholt v. Reliance Ins. Co. of Phil.,* 319 Pa. 340, 344, 179 A. 554, 556 (1935); *Beaver Falls B & L Ass'n v. Allemania Fire Ins.,* 305 Pa. 290, 293–95, 157 A. 616, 617–18 (1931); *Satchell v. Ins. Placement Facility*

*of Pa.,* 241 Pa.Super. 287, 297, 361 A.2d 375, 380 (1976); *Guarantee Trust & Safe Deposit Co. v. Home Mut. Fire Ins. Co.,* 180 Pa.Super. 1, 4, 117 A.2d 824, 826 (1955). As a result of its independent legal status, a mortgagee is both burdened and benefitted. The mortgagee's protection cannot be nullified or diminished by acts of the mortgagor, but the mortgagee is no more free to ignore the one-year limitations provision than is the mortgagor. *Satchell, supra,* 241 Pa.Super. at 297, 361 A.2d at 380; *Guarantee Trust, supra,* 180 Pa.Super. at 4, 117 A.2d at 826; *Miners Savings Bank v. Merchants Fire Ins. Co.,* 131 Pa.Super. 21, 27–28, 198 A. 495, 497–98 (1938).

To be sure, if an insurance company pays a homeowner not only for the homeowner's insurable interest, but also for the insurable interest of the mortgagee in the homeowner's property, then the insurance company breaches its contract with the mortgagee and the mortgagee may bring a lawsuit seeking recovery on that breach. *Guarantee Trust, supra,* 117 A.2d at 826. Such suits, however, derive from the insurer's duty to pay directly to the mortgagee any money owing for fire damage to the mortgagee's insurable interest in the property. Suits for breach of the mortgage clause are not premised on a generalized duty of the insurer to volunteer payment for damage to the mortgagee's property interest. Rather, the mortgage clause requires that if the insurer makes a payment for damage to the mortgagee's interest, then that payment must be made directly to the mortgagee.

The district court misconstrued the duty imposed by the mortgage clause under Pennsylvania law. In holding that Evans "had the right to rely upon ... [the Brookses'] action as protecting its interests," App. at 158a, the district court incorrectly assumed that the insurable interests of the Brookses and Evans were coextensive. The Brookses were protected under their fire loss policy against two types of loss: damage to their share of the real estate and damage to their personal property. In fact, the Brookses pressed to settlement only a claim for damage to their personal property, ultimately agreeing to dismiss their lawsuit in exchange for a $7,000 reimbursement of personal property losses. Given their distinct contractual relationship with West, the Brookses were entitled to settle their lawsuit on these terms.

Evans had the right to rely upon the Brookses' lawsuit only insofar as the Brookses pursued a claim for damage to their real property. By its explicit language, the mortgage clause protects a mortgagee's right to receive direct payment for "any loss payable under Coverage A or B," App. at 31a, that is, any damage sustained by the "dwelling" or "other structures on the residence premises." App. at 25a. The Brookses did not obtain any payment for losses to the "dwelling" or to "other structures," and so the mortgage clause simply did not apply to their settlement. Evans cannot now claim breach of the mortgage clause to avoid the one-year bar.

### III.

Pennsylvania courts have recognized a narrow exception to the strict enforcement of the one-year limitation contained in fire insurance policies. Where the insurer has by its actions led a policyholder to believe that the one-year bar will not be asserted, traditional concepts of waiver or estoppel have been applied to excuse an untimely lawsuit. *Schreiber, supra,* 498 Pa. at 25, 444 A.2d at 649; *General State Auth., supra,* 464 Pa. at 165 n. 6, 346 A.2d at 267 n. 6; *Commw. v. Transamerica Ins. Co.,* 462 Pa. 268, 274–75, 341 A.2d 74, 77 (1975). The case law makes clear, however, that the delinquent plaintiff must come forward with specific evidence supporting the claim of waiver or estoppel. *Lardas, supra,* 426 Pa. at 52, 231 A.2d at 742; *Petraglia v. Amer. Motorists Ins. Co.,* 284 Pa.Super. 1, 8–9, 424 A.2d 1360, 1364 (1981), *aff'd,* 498 Pa. 32, 33, 444 A.2d 653 (1982); *Satchell, supra,* 241 Pa.Super. at 295, 361 A.2d at 379.

Neither the complaint, the evidence nor the district court's opinion lends any support to the suggestion that any action by West induced Evans' late filing. Prior to the expiration of the one-year limit, Evans had only two contacts with West. About 11 months after the fire, Evans' attorney called West's attorney "to announce ... his intent to pursue a claim for [Evans] as mortgagee under the insurance policy." App. at 14a. Then, just two days before the one-year limit on lawsuits had expired, Evans sent a letter to West "demanding payment" and "requesting appropriate forms for the filing of a proof of loss." *Id.* The record is absolutely barren of evidence indicating that, during these two contacts or at any other time, West did anything that would lead Evans to believe the one-year limit would not be asserted. Indeed, West's vigorous defense from the start against Evans' claim suggests the opposite. Since Evans has entirely failed to meet its burden of coming forward with facts demonstrating waiver or estoppel, and since the district court identified no such facts, nothing in this case suggests that Evans' late filing may be excused.

### IV.

Before the district court, Evans advanced only one argument against enforcing the limitations provision. Evans contended that under Pennsylvania law, West was required to prove that it would be prejudiced by Evans' late filing. West correctly responded that this proposition had been squarely rejected in 1982 by the Pennsylvania Supreme Court in *Schreiber.*[4] Apparently recognizing that Evans' argument was foreclosed by *Schreiber*, the district court raised *sua sponte* an alternative theory of recovery—breach of the mortgage clause—and entered judgment on that basis. As the majority notes,

> The theory on which relief was granted to Evans had neither been raised in any of the pleadings nor been litigated with

either the express or implicit consent of the parties.... The relief granted by the district court thus was improperly granted....

Maj.Op. at 924.

Given this wholly correct observation, I do not understand how the majority can conclude by remanding this case so that "the district court may consider allowing Evans to amend its complaint" to claim breach of the mortgage clause. Maj.Op. at 924. This appeal comes to us not from a dismissal of a complaint and not from a grant of summary judgment, but rather from a complete bench trial at which no evidence was excluded, and at the conclusion of which the district court entered a final judgment awarding damages to the plaintiff. No authority supports, nor can logic sustain, the proposition that a plaintiff, having tried its claim and failed to make out a case, should be awarded a second chance by an appellate court to litigate its claim under a new theory of recovery.

The majority relies in part on Rule 54(c) of the Federal Rules of Civil Procedure. This rule presumes that a defendant's liability has been properly established at trial; it does not authorize the trial court to devise a new theory of recovery. The purpose of the rule is to free courts from the old formalism whereby a plaintiff's inartful pleading might preclude a trial court from awarding the most appropriate form of relief. Thus, under Rule 54(c), a trial judge may mold an appropriate remedy despite a plaintiff's failure to request that particular form of relief. Rule 54(c) does not, however, permit a trial court to ignore the essential antecedent issue—that is, whether the plaintiff has proven liability under some theory of recovery. *See* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2664 at 153–54 (1983). The problem in this case is not that Evans requested the wrong remedy; no

---

**4.** *Schreiber* holds that because the one-year deadline in Pennsylvania fire insurance policies is mandated by statute, rather than by a contract of adhesion, it should be enforced regard-

less of the showing of any prejudice to the insurance company. 498 Pa. at 24, 444 A.2d at 648–49.

one contests that if West is liable, Evans should receive money damages in the amount of $24,733.30. The problem, rather, is the antecedent one of liability, which is not addressed by Rule 54(c). The question thus becomes whether, when the plaintiff pleads the wrong theory of recovery, the trial court may construct a new theory after trial is completed.

This issue—post trial changes in the theory of recovery—is addressed by Fed.R. Civ.P. 15(b), as the majority correctly observes. Rule 15(b), however, clearly limits those circumstances in which a plaintiff is permitted to prevail on an unpleaded theory of recovery:

> When issues not raised by the pleadings are tried by express or implied consent of the parties . . ., [s]uch amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment.

In this case, the district judge in effect permitted an amendment of the pleadings (to state a claim for breach of the mortgage clause) and then granted recovery in accordance with that theory. This constructive amendment was plainly erroneous under Rule 15(b). Nothing in the evidence or the proceedings supports the breach of mortgage clause theory. Nor can it be said that this issue was tried with the consent of the parties. The majority acknowledges as much in holding that "[b]ecause the [breach of mortgage clause theory] . . . had not been tried with the express or implied consent of the parties and West thereby was prejudiced, amendment under Fed.R. Civ.P. 15(b) would be improper." Maj.Op. at 924. Nonetheless, the majority remands this case for possible amendment of the complaint and retrial of the case under the district court's new theory of recovery. Absent a determination that Evans was prejudiced by trial error, this disposition is, in my view, wholly improper.

### V.

The theory adopted by the district court—that West breached the mortgage clause—is at odds both with the proof offered at trial and with Pennsylvania law. No other basis for excusing Evans' untimely filing can be gleaned from the record. Sitting in diversity, we owe a special duty of adherence to the mandate of a state's legislature and its courts. Because I believe that Pennsylvania law requires a reversal of the district court's decision and the entry of judgment for West, I must respectfully dissent.

