861 F.2d 1290
 274 U.S.App.D.C. 95
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Pauline SACKS and Marvin Sacks, Appellants,
v.
Herbert ROTHBERG, Appellee.
 No. 88-7009.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 10, 1988.
 
 Before SPOTTSWOOD W. ROBINSON, III, STARR and BUCKLEY, Circuit Judges.
 
 JUDGMENT
 PER CURIAM
 
 1
 This case was considered on the record on appeal from an order of the United States District Court for the District of Columbia and on briefs filed by the parties and argument by counsel. The court has determined that the issues presented occasion no need for an opinion. See D.C.Cir.R. 14(c). For the reasons set forth in the accompanying memorandum. It is
 
 
 2
 ORDERED and ADJUDGED that the judgment of the district court is affirmed. It is
 
 
 3
 FURTHER ORDERED, by the Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15 (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 This case comes before us on appeal from the District Court's grant of summary judgment against appellees (the Sacks), rejecting their claims of breach of contract and fraud. The Sacks raise three issues: first, whether the District Court erred in finding that loan transactions entered into by Central Liquor Store, Inc. were outside the Settlement Agreement previously entered into by Mrs. Sacks and appellant (Rothberg) individually; second, whether the District Court erred in finding that there was no default under the Settlement Agreement when appellant entered into the 9E Associates Limited Partnership Agreement; and third, whether the District Court erred in finding that the Sacks had not made the requisite showing to support a claim of fraud.
 
 I. DISCUSSION
 1. Central Liquor Loan Transactions
 
 5
 The Sacks contend that Rothberg defaulted under paragraph 14 of the Settlement Agreement when Central Liquor encumbered its property to obtain various loans between 1984 and 1986. The District Court rightly rejected this contention. The language of paragraph 14 expressly refers to Rothberg's personal assets only: "(a) his interest in Central Liquor Store, Inc., (b) his interest in any commercial or investment real estate wherever located, or (c) any financial instruments in his ownership...." Settlement Agreement, p 14 (emphasis added). Since the construction of unambiguous contractual language is a matter of law entrusted to the court, see Horn & Hardart Co. v. Nat. R.R. Passenger Corp., 793 F.2d 356, 359 (D.C.Cir.1986), we need pause only momentarily in upholding the District Court's reading of this clear language. Thus, as the Sacks appear to recognize in their briefs before us, the Central Liquor loan transactions can only be considered to have been in breach of the Settlement Agreement if we disregard Central Liquor's corporate form and attribute its assets to Rothberg.
 
 
 6
 It is, of course, hornbook law that a duly-formed corporation enjoys a separate legal existence from its shareholders and that shareholders have no specific interest in corporate property. See Office of People's Counsel v. Public Service Comm'n, 520 A.2d 677, 682 (D.C.App.1987). Thus, "even if stock ownership is concentrated in the hands of one person, it does not alter the fact that title to the corporate property is vested in the corporation and not in the owner of its stock." Id.
 
 
 7
 In keeping with these principles, piercing the corporate veil represents an extraordinary remedy justified only by an affirmative showing of unity of interest and abuse of the corporate form. See Schattner v. Girard, Inc., 668 F.2d 1366, 1370 (D.C.Cir.1981); Vuitch v. Furr, 482 A.2d 811, 815 (D.C.1984). The Sacks have fallen far short of making out an affirmative case in this respect so as to withstand a well-founded motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 23 (1986). They have provided no evidence of any substance indicating a "substantial disregard of the formalities of the corporate form," "extensive commingling of personal and corporate funds," or the fraudulent use of the corporate form to perpetrate a wrong. Vuitch v. Furr, 482 A.2d at 816.[1] The loan transactions were entered into by Central Liquor Store, Inc., a corporation in which Rothberg maintained only a 50 percent interest. There is no evidence that Rothberg's sister, who owned the other 50 percent share, was not personally and substantially involved in the management and guidance of the corporation. Cf. Joint Appendix at 78-82 (deposition of Miriam Alpern); Joint Appendix at 154-55 (minutes of March 30, 1984 meeting of Central Liquor Store, Inc.). Absent any compelling evidence that Rothberg treated Central Liquor as his alter ego, see supra n. 1, the District Court properly declined to attribute the actions of the corporation to him.
 
 
 8
 2. 9E Associates Limited Partnership Agreement
 
 
 9
 The Sacks next contend that Rothberg breached paragraph 14 of the Settlement Agreement by failing to provide liens, notice of settlement dates, or payment of the accelerated balance when he entered into the 9E Associates Limited Partnership Agreement on April 4, 1985. Sacks Resp.Br. at 4-5. Their argument widely misses the mark. Paragraph 14 merely requires that Rothberg provide Mrs. Sacks with written notice of the settlement of "any transfer or other disposition" no less than 20 days prior to the settlement date. It is undisputed that the settlement date for the present transaction was December 29, 1986. Thus, as the District Court correctly found, no default could have occurred at the time the complaint was filed on April 1, 1986.[2]
 
 
 10
 The Sacks also request that we determine the date on which a "sale, transfer or other disposition" of the Central Liquor property occurred as a result of the 9E Agreement. The District Court rebuffed this very request on the grounds that it presented a new theory of recovery not included in the original complaint and that, accordingly, it would unfairly prejudice Rothberg because of its eleventh-hour appearance in the litigation. We agree. The Sacks are not asking us to review the District Court's earlier denial of their motion to amend the complaint. Rather, they are inviting us to rule on an issue raised only after the close of pleadings. We decline the invitation. Rothberg was simply not given a fair opportunity below to respond to this issue; basic principles of due process and the orderly conduct of litigation protect litigants from the unenviable task of defending against arguments advanced in this belated fashion. See Conair v. N.L.R.B., 721 F.2d 1355, 1372 (D.C.Cir.1983), cert. denied, 467 U.S. 1231 (1984); Evans Products Co. v. West American Ins. Co., 736 F.2d 920, 923-24 (3d Cir.1984).
 
 3. Fraud
 
 11
 Finally, the Sacks contend that Rothberg engaged in a course of fraudulent misrepresentation insofar as he intended to breach the Settlement Agreement by encumbering and transferring the Central Liquor Store, Inc. property. In the District of Columbia, "fraud is never presumed and must be particularly pleaded." Bennett v. Kiggins, 377 A.2d 57, 59 (D.C.1977), cert. denied, 434 U.S. 1034 (1978). It is well established that, in order to demonstrate fraud, the following elements must be shown: (1) an intentionally false representation concerning a material fact, (2) made with the intent to deceive, and (3) upon which reliance is placed. Higgs v. Higgs, 472 A.2d 875, 876 (D.C.1984).
 
 
 12
 Again, the District Court correctly concluded that the Sacks failed to come forward with evidence to establish the requisite elements of fraud. As we discussed above, neither the Central Liquor loan transactions nor the 9E Associates transfer were accomplished in contravention of the Settlement Agreement. Moreover, Rothberg did not conceal any material facts with regard to these transactions, since he complied in full with the notice requirements set forth in the Settlement Agreement.[3] Finally, as we have already seen, the Sacks have advanced no persuasive reason to justify the extraordinary task of piercing the corporate veil. Because the Sacks have not come forward any such evidence to the contrary, their fraud claim founders in the face of a properly supported motion for summary judgment. See Celotex, 477 U.S. at 322-23.
 
 
 13
 For the foregoing reasons, the judgment of the District Court is affirmed. An appropriate order will be entered accordingly.
 
 
 
 [1]
 The affidavit of Herman Cohen is simply not enough, standing alone, to create a genuine issue of material fact on the "unity of interest" question, even in light of our posture in review of summary judgment motions to "resolve all inferences following reasonably from the evidence in favor of [movants]." Nepera Chemical, Inc. v. Sea-Land Service, 794 F.2d 688, 699 (D.C.Cir.1986). Taking cash from the store's cash register, even assuming its impropriety, scarcely rises to the daunting level required in law to warrant obliterating the corporate form
 
 
 [2]
 In addition, paragraph 14 does not require Rothberg to record the liens or take any other similar action upon transfer or disposition of property that is covered by the Agreement
 
 
 [3]
 Since the Central Liquor loan transactions did not trigger the provisions of paragraph 14, Rothberg obviously had no obligation to provide notice of them. He was, however, obliged to provide notice of the 9E Associates transfer "no less than 20 days prior to ... settlement." Rothberg clearly complied with this provision by providing notice of the December 29, 1986 settlement date on December 5, 1986