Anthony CIOFFE, & Mare Distributors, Inc., A New Jersey Corporation, Plaintiffs-Appellants,

v.

Arnold F. MORRIS & Jet Fingers, Inc., a Florida Corporation, Defendants-Appellees.

No. 81–5140.

United States Court of Appeals, Eleventh Circuit.

May 17, 1982.

**540**

Herbert A. Warren, Richard A. Warren, Miami, Fla., for plaintiffs-appellants.

Daniel J. Newman, Tampa, Fla., for Morris.

Appeal from the United States District Court for the Middle District of Florida.

Before GODBOLD, Chief Judge, HILL and FAY, Circuit Judges.

FAY, Circuit Judge:

Defendant Arnold Morris entered into two contracts, one superseding the other, with Plaintiffs Anthony Cioffe and Mare Distributors, Inc. (Mare).[1] Morris failed to meet installment payments due under the second contract and wound up in federal court defending a diversity suit.

The first contract between the parties was entered into on June 25, 1976. At that time, Cioffe and Walter Thoelen[2] held pat-ent rights to "Jet Fingers", a swimming pool cleaning device, and Mare Distributors manufactured the device under an exclusive license. The June contract granted Morris a franchise to manufacture and sell Jet Fingers units in the southern states. In consideration for the franchise and 1,000 Jet Fingers units, Morris agreed to pay Cioffe, Thoelen, and Mare $130,000; $25,000 to be paid upon execution of the agreement and the remainder to be paid by August, 1977.

The second agreement was entered into on November 4, 1976.[3] Cioffe and Mare released Morris from any claims under the June agreement and Cioffe "sold" all of his rights in the Jet Fingers device to Morris for $25,000; $5,000 to be paid initially and the remainder to be paid in fixed installments. When Morris failed to meet the installment payments, Cioffe filed suit seeking rescission of the November agreement, enforcement of the June agreement, and an accounting of sums due under the June agreement.

After a bench trial, the District Court issued its first opinion on October 8, 1980. Therein the District Court held that Morris' material breach of the November agreement gave Cioffe and Mare the right to rescind that agreement or, alternatively, to collect damages for its breach. The plaintiffs had originally sought rescission, but the trial court's further holding that rescission of the November agreement would not revive obligations under the June agreement prompted them to elect damages, which amounted to $20,000.[4]

---

1. We refer to the parties by their status in the proceedings before the District Court.

2. Thoelen is not a party in this case.

3. Thoelen had assigned one-half of his interest in the Jet Fingers patents to Morris on October 29, 1976.

4. The District Court recognized that whether the June agreement could be revived depended on whether the November agreement was an executory accord or a novation. An executory accord is "an agreement for the future discharge of an existing claim by a substituted performance." 6 Corbin on Contracts § 1268, at 71 (1962). The prior obligation is not discharged until the accord is performed and if the accord is breached an action may be based either on that breach or on the original obligation. *Id.* § 1271. A novation, on the other hand, operates as an immediate discharge of the prior claim. A breach of the new agreement does not revive the discharged claim and the injured party may not sue to enforce the terms of the original claim. *Id.* § 1293. The District Court construed the November agreement to be a novation of the June agreement. Therefore, rescission of the November agreement would not revive the June agreement.

In addition to allowing the plaintiffs an opportunity to elect damages, the District Court held that 240 Jet Fingers units,[5] manufacturing equipment, and a movie projector and pedestal were shipped to Morris outside the terms of the June and November agreements. Thus, the November agreement did not release Morris from liability on those items. Noting that the defendant never contested the accuracy of the invoices pertaining to those items, the trial court permitted recovery of $19,259.10 on an account stated theory.

In response to the October order, the defendant filed a motion to amend findings of fact and conclusions of law which requested reconsideration of the account stated liability. The District Court concluded that the defendant did not consent to trial of the account stated issue and that it would be unfair to impose such liability when both parties went to trial under the supposition that their rights and obligations would be governed solely by the June and November contracts. A supplemental order was issued on December 2, 1980, which struck the recovery awarded under the account stated theory.

Two issues are presented on appeal. The first is whether the District Court should have permitted the original order to stand without modification. The second is whether the District Court should have awarded prejudgment interest.

Regarding the first question, the plaintiffs' premise is that the District Court should have permitted relief on the basis of an account stated theory because Rule 54(c), Federal Rules of Civil Procedure, requires that every final judgment shall grant the relief to which a party is entitled, even though such relief is not demanded in the pleadings. See, e.g., Sapp v. Renfroe, 511 F.2d 172 (5th Cir. 1975).[6] Our problem, however, is not that easily resolved. Rule 54(c) creates no entitlement to relief based on issues not squarely presented and litigated at trial. As the plaintiffs acknowledge, when relief is to be based on an issue not raised in the pleadings, Rule 15(b), Federal Rules of Civil Procedure, must be considered. See generally Jimenez v. Tuna Vessel Granada, 652 F.2d 415 (5th Cir. 1981); T. J. Stevenson & Co. v. 81,193 Bags of Flour, 629 F.2d 338 (5th Cir. 1980); International Harvester Credit Corp. v. East Coast Truck, 547 F.2d 888 (5th Cir. 1977). That rule provides that unpled issues which are tried with either the express or implied consent of the parties are to be treated as if they were raised in the pleadings.[7] Thus, a judgment may be based on an unpled issue as long as consent to trial of the issue is evident. The corollary is, of course, that a judgment may not be based on issues not presented in the pleadings and not tried with the express or implied consent of the parties. International Harvester, 547 F.2d at 891; Monod v. Futura, Inc., 415 F.2d 1170, 1174 (10th Cir. 1969). Moreover, im-

---

5. These were in addition to the 1,000 units specifically required by the June contract.

6. Fed.R.Civ.P. 54(c) provides:
   *Demand for Judgment.* A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

7. Fed.R.Civ.P. 15(b) provides:
   *Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

plied consent under Rule 15(b) will not be found if the defendant will be prejudiced; that is, if the defendant had no notice of the new issue, if the defendant could have offered additional evidence in defense, or if the defendant in some other way was denied a fair opportunity to defend. *See Jimenez*, 652 F.2d at 421; *International Harvester*, 547 F.2d at 890.

In this case, the trial court found that the account stated relief was based on an unpled issue which did not meet the requirements of Rule 15(b). The record amply supports this conclusion.

The pleadings and pretrial statements of the parties demonstrate that both sides believed that their entire course of dealings fell within the terms of the two contracts. No mention is made in those documents of an account stated liability or of any other basis of liability aside from the two contracts. We note that in clause 11 of the June contract, the defendant agreed to purchase "all materials used for 'Jet Fingers' at cost plus shipping from [a] supplier designated by Cioffe, Thoelen and Mare." Paragraph 17 of the complaint alleges: "Pursuant to the Agreement of June 25, 1976, Plaintiff, MARE DISTRIBUTORS, INC., delivered to Defendant all materials used for 'Jet Fingers,' but the Defendant has failed to pay the costs plus shipping which amounts to $19,259.10." Although that amount was calculated by the trial judge as an account stated, it is obvious that the plaintiffs brought suit on the theory that they had a right to receive payment for the Jet Fingers devices, the manufacturing equipment, and the movie projector and pedestal under the terms of the June contract. The holding of the District Court that rescission of the November contract would not resurrect liability under the June contract settled that question. Whether the plaintiffs are entitled to recovery for the items because they were not shipped under the terms of the June contract is a separate issue which was not raised in the pleadings.

The District Court found that the defendant did not consent to trial of this new issue. We agree. The plaintiffs never intimated during trial that they intended to rely on an account stated theory, nor did they give any indication that they were litigating claims aside from those covered under the two contracts. In fact, the record and the trial transcript demonstrate that both parties were unaware of any other source of liability.

Nevertheless, the plaintiffs would have us imply consent based on the failure of the defendant to object to the introduction of itemized invoices for the Jet Fingers units and the other equipment. Such a holding, under the circumstances of this case, would not be reasonable. The plaintiffs introduced this evidence to establish the value of items that they contended were shipped pursuant to the June contract. They never indicated that the invoices could also support separate relief based on an account stated. "[T]he introduction of evidence relevant to an issue already in the case may not be used to show consent to trial of a new issue absent a clear indication that the party who introduced the evidence was attempting to raise a new issue." *International Harvester*, 547 F.2d at 890; *see also Jimenez*, 652 F.2d at 421; *McLean-Behm Steel Erectors, Inc. v. Occupational Safety & Health Review Commission*, 608 F.2d 580, 582 (5th Cir. 1979).

With no reason to suspect that the invoices would be held to establish an independent source of liability, Defendant Morris proceeded at trial on the theory that the November contract released him from liability under the June contract and he succeeded with this defense. Had the defendant suspected that the invoices had significance independent of the contracts, he could have framed his defense accordingly. The defendant was not given a fair opportunity to present a defense relevant to the account stated issue and to permit recovery on that basis would be prejudicial. *International Harvester*, 547 F.2d at 890.[8] We find that

---

**8.** The plaintiffs argue that, conceding that the parties believed the items to be under the June

contract, any defenses the defendant had to the

the defendant did not consent to trial of the account stated issue and we affirm the District Court's order striking the award based on that issue.

The other issue on appeal is the denial of prejudgment interest on damages under the November contract. Under Florida law, which governs this issue, prejudgment interest is allowed only on liquidated claims. *Town of Longboat Key v. Carl E. Widell & Son*, 362 So.2d 719 (Fla. 2d Dist. Ct.App.1978). "[A] claim is unliquidated when the amount of damages cannot be computed except on conflicting evidence, inferences and interpretations." *Id.* at 723; *see also Parker's Mechanical Contractor's, Inc. v. Eastpoint Water & Sewer District*, 367 So.2d 665, 669–70 (Fla. 1st Dist.Ct. App.), *cert. denied*, 378 So.2d 347 (Fla.1979). But, where a sum certain is involved, "it is proper to allow interest at the legal rate from the date the debt was due despite an honest and bona fide dispute as to the debt." *Broward County v. Sattler*, 400 So.2d 1031, 1033 (Fla. 4th Dist.Ct.App.1981). In this case the defendant never disputed that he had failed to make the installment payments called for under the November contract. Thus, the amount required by the November contract is a sum certain and the plaintiffs are entitled to prejudgment interest. We reverse on this issue and the case is remanded to the District Court for determination of prejudgment interest in the appropriate amount.

The judgment of the District Court is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

invoices could have been raised at trial to escape that liability. They would have us assume that the defendant's failure to do so implies that the defendant could offer no defense. This sort of reasoning is specious. In hindsight the defendant should have objected, but at the time, as the parties viewed the case, there was no need to object. The defendant went to trial and succeeded on his chosen theory. Had he been aware that the District Court might construe the June contract as it did, he might have offered evidence regarding the intent of the parties in entering into the June contract, he might have objected to the accuracy of the invoices, or he might have made other objections. The defendant argues that he would have done all of these things. Without speculating on the merits of such defensive actions, we hold only that fairness and due process require that the defendant be given an opportunity to present his defense.