[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-10140
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 1, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00872-CV-ORL-DAB

ROBERT DAWLEY,

Plaintiff-Counter-
Defendant-Appellee,

versus

NF ENERGY SAVING CORP. OF AMERICA,

Defendant-Counter-
Claimant-Appellant,

LI GANG, CEO,

Defendant,

SAMUEL WINER,

Counter-Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 1, 2010)

Before TJOFLAT, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

NF Energy Saving Corp. of America, Inc. ("NF Energy") appeals the district court's entry of judgment in the favor of Plaintiff, Robert L. Dawley. After review and oral argument, we reverse and render judgment in favor of NF Energy.

I.

Mr. Dawley, who proceeded <u>pro se</u> in the district court,[1] entered into a series of transactions with NF Energy.[2] Two are relevant to this appeal. First, Mr. Dawley loaned NF Energy a total of $400,000, which was secured by two "convertible secured promissory notes" for $200,000 each. As amended, the notes were materially identical. Each was to accrue interest at a rate of 12% per year. Each provided that Mr. Dawley could, at his option, elect to receive payment in the form of company stock at a conversion rate of $0.10 per share. And finally, each provided that NF Energy could repay the principal at any time, but would be obligated for the full amount of interest due under the note.

NF Energy then encountered financial difficulty and sought prospective purchasers for the company. Because potential buyers would not purchase the

---

[1] Counsel was appointed to represent Mr. Dawley on appeal.

[2] At the time of these transactions, NF Energy was variously known as Diagnostic Corporation of America, Inc. and Global Broadcast Group, Inc. We will refer to it as NF Energy.

company with the $400,000 debt to Mr. Dawley on its books, however, NF Energy persuaded him to convert the notes into stock. Accordingly, approximately six months before their maturity date, the notes were converted to four million shares of stock at the conversion price of $0.10 per share. Although Mr. Dawley accepted the certificate for four million shares, he disputed the conversion price, claiming that he and NF Energy had agreed to modify the conversion price to $0.05 per share to reflect a decline in the market value of the company's stock.

Second, Mr. Dawley and NF Energy entered into a one-page "Consulting Agreement" drafted by Mr. Dawley himself. This agreement provided that upon conversion of the notes, Mr. Dawley "shall be engaged to provide consulting services for the company" at an annual salary of $60,000. Although the Consulting Agreement described no duties Mr. Dawley was to perform, it provided that "[t]his Consulting Agreement cannot be voided and remains in effect until [Mr. Dawley] decides to abandon it." It is not disputed that NF Energy failed to perform under this agreement.

## II.

Mr. Dawley filed suit, alleging breach of the two promissory notes and the Consulting Agreement.[3] After a one-day bench trial,[4] the district court ruled

_____

[3] Mr. Dawley also alleged that NF Energy breached other agreements. The district court ruled in favor of NF Energy on each of those claims. Mr. Dawley has not appealed those

against Mr. Dawley on his claim for breach of the notes, finding that they were properly satisfied by their conversion to four million shares of company stock at a price of $0.10 per share.

As to the Consulting Agreement, however, the district court ruled in Mr. Dawley's favor. The district court correctly determined that Mr. Dawley sought specific performance of the Consulting Agreement. The district court was also correct in finding that Mr. Dawley was not entitled to that remedy because the "terms [of the agreement] are not sufficiently definite to make enforcement feasible" as Florida law requires. See Hesston Corp. v. Roche, 599 So. 2d 148, 151 (Fla. 5th DCA 1992) (explaining that Florida courts will only enforce a lifetime employment contract "where its terms are sufficiently definite to confirm the intent of the parties to form a lifetime employment agreement and to make enforcement feasible").

The district court's finding that Mr. Dawley was not entitled to specific performance mandates entry of judgment in NF Energy's favor on Mr. Dawley's claim. But instead, the district court went on to find that the parties did not intend the Consulting Agreement to be a contract for employment, but rather intended to

rulings.

[4] By consent of the parties, the case was tried before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

compensate Mr. Dawley for the 12% interest that he lost when the promissory notes were converted to stock.  Based on this finding, the district court then equitably reformed the Consulting Agreement and ordered NF Energy to repurchase the converted shares at the notes' principal value of $400,000 and to pay Mr. Dawley interest at a rate of 12% per year from the date of conversion until the time of repurchase.  In granting reformation, the district court acknowledged that Mr. Dawley did not seek this relief.  Nevertheless, citing Federal Rule of Civil Procedure 15(b)(2), the district court found that Mr. Dawley's entitlement to reformation was "implicit in the papers and the proof" based on the fact that NF Energy filed a counterclaim requesting a declaratory judgment that the Consulting Agreement was not a valid and binding contract and "providing for any other relief that [the] Court deems appropriate."

We review a district court's decision to conform the pleadings to the evidence presented at trial for an abuse of discretion.  See In re Westec Corp., 434 F.2d 195, 203–04 (5th Cir. 1970) (reviewing denial of leave to amend pleadings at the end of trial for abuse of discretion).[5]  Federal Rule of Civil Procedure 15(b)(2) provides that where issues are tried by express or implied consent of the parties,

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

those issues will be treated as having been raised in the pleadings. "Thus, a judgment may be based on an unpled issue as long as consent to trial of the issue is evident." Cioffe v. Morris, 676 F.2d 539, 541 (11th Cir. 1982). "The corollary is, of course, that a judgment may not be based on issues not presented in the pleadings and not tried with the express or implied consent of the parties." Id. "[C]onsent under Rule 15(b) will not be found if the defendant will be prejudiced; that is, if the defendant had no notice of the new issue, if the defendant could have offered additional evidence in defense, or if the defendant in some other way was denied a fair opportunity to defend." Id. at 541–42. "'A party cannot be said to have implicitly consented to the trial of an issue not presented by the pleadings unless that party should have recognized that the issue had entered the case at trial.'" Gilmere v. City of Atlanta, 864 F.2d 734, 737 (11th Cir. 1989) (quoting Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1487 (11th Cir. 1987)).

Here, Mr. Dawley does not dispute that he did not expressly seek reformation of the Consulting Agreement in his pleadings or at trial. This being the case, the district court's judgment based on this unpled issue can be upheld only if NF Energy impliedly consented to adjudicate it.

The record before us does not demonstrate that NF Energy consented to try

6

the issue of whether Mr. Dawley was entitled to equitable reformation of the Consulting Agreement. Based on our careful review of the evidence presented at trial, we conclude that the evidence was not sufficient to place NF Energy on notice that Mr. Dawley was seeking anything other than specific performance of the Consulting Agreement. This remedy conflicts with the equitable reformation of a contract, which Florida law permits only when the written contract does not accurately reflect the parties' agreement due to fraud, inequitable conduct, accident, inadvertence, or mutual mistake. See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n, 8 F.3d 760, 765 (11th Cir. 1993); Providence Square Ass'n, Inc. v. Biancardi, 507 So. 2d 1366, 1372 & n.3 (Fla. 1987) (explaining that reformation is proper when there is a "mutual mistake" or "when there is a mistake on the part of one side of the transaction, and inequitable conduct on the part of the other side"). Accordingly, NF Energy had no reason to anticipate that the issue of Mr. Dawley's entitlement to reformation was before the court. NF Energy was therefore denied the opportunity to defend on this ground and the district court abused its discretion by treating the issue of equitable reformation as if it were tried by consent of the parties pursuant to Rule 15(b)(2).

Because Mr. Dawley was not entitled to specific performance of the Consulting Agreement and Rule 15(b)(2) cannot support the district court's

7

judgment based on the unpled issue of equitable reformation, NF Energy is entitled

to judgment as a matter of law. The decision of the district court is hereby

**REVERSED** and a judgment is rendered in favor of NF Energy.