[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 7, 2011
JOHN LEY
CLERK

Nos. 10-12226; 10-14237
Non-Argument Calendar
_____

D.C. Docket No. 8:06-cv-00595-SCB-TGW

CLAYTON KEARNEY,

Plaintiff - Appellant,

versus

AUTO-OWNERS INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(April 7, 2011)

Before EDMONDSON, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

The plaintiff-appellant Clayton Kearney ("Kearney") appeals certain district

court rulings made during and after a trial, in which the jury found that the

defendant-appellee Auto-Owners Insurance Co. ("Auto-Owners") did not engage in bad faith in its handling of Kearney's insurance claim for uninsured motorist ("UM") benefits. Specifically, Kearney asserts reversible error in the verdict form used and jury instructions given; the court's rulings on the admission of certain expert testimony; and the court's refusal to award Kearney prevailing party status. Following a brief recitation of the relevant facts,[1] we address each issue in turn.

## I.

This litigation stems from a single-car accident in 2002, which left Kearney with serious injuries affecting his emotional and cognitive functioning. At the time of the accident, Kearney was a passenger in a car driven by an uninsured motorist, so he sought to recover from his personal UM coverage.

Three insurance policies provided coverage for Kearney's accident. First, a commercial auto policy issued by the Zurich American Insurance Company ("Zurich") provided coverage for Kearney's father's company's motor fleet. After prolonged litigation between Kearney and Zurich, this policy paid Kearney $500,000 in UM coverage. Second, an Auto-Owners Recreational Vehicle Policy provided an additional $30,000 in UM coverage. Third, an Auto-Owners

---

[1] Because the jury ruled in favor of Auto-Owners, we construe the facts in the light most favorable to the jury's verdict. See Woodard v. Fanboy, L.L.C., 298 F.3d 1261, 1263 n.1 (11th Cir. 2002).

"Umbrella Policy" provided $5 million in UM coverage for costs in excess of the Zurich and RV policies.  This appeal addresses the way Auto-Owners handled Kearney's claims under the Umbrella Policy.

Because the Umbrella Policy provided excess insurance coverage, Kearney first sought payments under the Zurich and Recreational Vehicle Policies.  This proved more difficult than expected, however, because the Zurich Policy contained a mistake regarding the extent of its UM coverage.  Specifically, the Zurich Policy covered 145 vehicles in the Kearney motor fleet and provided $500,000 per incidence for *each* vehicle.  Although the parties intended—and, perhaps more importantly, Kearney's father paid for—"non-stacking" coverage that would have limited Kearney's recovery to $500,000, the policy stated on its face that it provided "stacking" coverage.  Thus, based solely on what was contained within the four corners of the document, the Zurich Policy purported to provide up to $72.5-million worth of coverage for a single incident to a single vehicle (145 vehicles at $500,000 each).  Initially, Kearney filed suit against Zurich seeking to enforce this "stacking" language in the Zurich Policy, but after roughly 18 months of mediation and pre-trial investigation the parties settled.  As part of the settlement, the parties agreed that the Zurich Policy was non-stacking,

3

and Zurich paid the full $500,000 owed under the Zurich Policy. Zurich also paid roughly $10-million in damages.

After the Zurich litigation was resolved, Kearney sought to collect further payment from Auto-Owners. Kearney, through his attorney, first wrote Auto Owners asserting "that the Auto Owners policy limits should be paid now." Kearney's attorney argued that the policy limits should be paid because Kearney's lost future earnings stemming from the accident were "the largest [he] ha[d] ever seen." Auto-Owners refused, questioning whether Kearney's claims exceeded the $10.5 million already paid by Zurich.

In response, on November 4, 2005, Kearney filed a civil remedy notice, which initiated a 60-day period in which Auto-Owners could pay the claims and prevent further litigation. However, Kearney did not provide Auto-Owners with a copy of the settlement agreement with Zurich until only 11 days remained in that 60-day period. Auto-Owners responded to the civil remedy notice arguing that, inter alia, questions remained as to whether Zurich's settlement fully compensated Kearney, and whether the Zurich Policy actually provided stacking coverage. Auto-Owners did not pay Kearney's claims within the 60-day period.

Kearney then brought this action. As the district court described:

4

On February 24, 2006, Clayton Kearney filed a lawsuit in state court against Auto-Owners. The lawsuit contained four counts. Counts I and II alleged failure to pay insurance benefits under, respectively, the $30,000 Recreational Vehicle Policy and the $5-million Executive Umbrella Policy. Counts III and IV alleged bad faith handling of Kearney's claims under these two policies. Auto-Owners removed the case to federal court on April 7, 2006.

Broadly speaking, Auto-Owners' defense consisted of four arguments. First, Auto-Owners argued that because [Zurich] had issued a primary policy with stacked coverage, Auto-Owners did not have to pay *anything* under its umbrella policy unless Kearney's damages exceeded $72.5-million. Second, Auto-Owners argued that any payment it had to make under the [Umbrella Policy] could be reduced by the amount of the settlement that Kearney had obtained from Zurich to settle the separate bad faith lawsuit in state court. Third, Auto-Owners argued that Kearney's own negligence contributed to his injuries because he did not wear a seat belt. Fourth, Auto-Owners disputed the amount of Kearney's damages, which Kearney's attorney at one point estimated at a "midrange" of about 10.5-million.

Kearney v. Auto-Owners Ins. Co., No. 06-cv-00595, 2010 WL 3259702, at *2 (M.D. Fla. Aug. 16, 2010). Before trial, the parties agreed to dismiss Counts I and III with prejudice, after Auto-Owners paid the $30,000 owed under the Recreational Vehicle Policy.

On August 7, 2007, the district court adopted the Report and Recommendations of the Magistrate Judge, which in relevant part concluded that the Zurich Policy was non-stacking and that, as a result, the Umbrella Policy took effect when Kearney's damages exceeded $530,000. Auto-Owners then

5

unconditionally paid Kearney the $5-million coverage limit provided by the Umbrella Policy.

Following this $5-million payment, Kearney moved to recover his attorney's fees and costs from Auto-Owners for litigation efforts to obtain that payment. Kearney argued that he was entitled to recover all fees incurred after April 28, 2005, the date on which Kearney's attorney wrote Auto-Owners and stated "[w]e believe that the Auto-Owners policy limits should be paid now." Auto-Owners opposed this motion.

The case proceeded to trial, which was bifurcated into two stages: first, a determination of Kearney's damages, and second, a determination of whether Auto-Owners acted in bad faith in its management of Kearney's claim. On November 1, 2007, four days prior to trial, Kearney moved to voluntarily dismiss with prejudice Count II of the Complaint, which sought payment of the $5-million Umbrella Policy limit. The Court granted the motion to dismiss Count II, but did not rule on Kearney's motion for fees and costs related to that count.

A jury first concluded that Kearney suffered damages of roughly $60 million, which the court then reduced to $30 million on account of Kearney's contributory negligence. In the second proceeding, the jury then found that Auto-

Owners had not acted in bad faith. As a result, the district court entered judgment in favor of Auto-Owners.

After entering judgment, in a series of rulings the district court denied Kearney's request for fees under the Federal Rules of Civil Procedure relating to the litigation of Counts I and II; granted Kearney's motion for fees under provisions of Florida law; and awarded certain fees and costs to Auto-Owners premised on their status as the prevailing party to the litigation. The payment of fees is currently stayed, pending resolution of this appeal and further rulings by the district court.

Kearney raises three issues on appeal: the propriety of the verdict form and jury instructions; the district court's exclusion of certain expert testimony; and his entitlement to prevailing party status.[2] We address these issues in turn.

## II.

Kearney argues first that the district court abused its discretion in using a verdict form and jury instructions that compressed two distinct claims for relief into a single cause of action. Specifically, Kearney argues that the verdict form

---

[2] Kearney presents as a fourth issue whether this Court should reverse the district court's awards of costs to Auto-Owners. Because we affirm the district court's rulings, this contention is moot, and we therefore do not address it. See Mancill v. Hall, 545 F.3d 935, 939 n.4 (11th Cir. 2008).

and jury instructions used by the district court erroneously required the jury to consider whether Auto-Owners engaged in unfair claim practices (as defined by Florida law) *as part of* Kearney's claim that Auto-Owners engaged in bad faith in handling his claims. Kearney argues that these were actually two separate theories of liability, and that the jury thus should have had the opportunity to rule against Auto-Owners on *either* ground. While Auto-Owners acknowledges that Kearney could have pled these claims separately as distinct causes of action, it asserts that his conduct during the course of litigation supports the verdict form and jury instruction ultimately used by the district court.

We review a district court's "[j]ury instructions . . . for abuse of discretion." Shaps v. Provident Life & Acc. Ins. Co., 244 F.3d 876, 887 (11th Cir. 2001). Similarly, "[b]oth the question of whether to employ special interrogatories and the question of how those interrogatories are to be framed are matters within the discretion of the trial judge." Worsham v. A.H. Robins Co., 734 F.2d 676, 690 (11th Cir. 1984). Here, the propriety of the jury verdict form and jury instructions depends entirely upon whether the district court correctly concluded that Kearney alleged only one theory of primary liability regarding Auto-Workers handling of Kearney's claims.

To make this determination, we look to see precisely what issues Kearney litigated before the district court. Although a party's pleadings generally identify the dispute between two parties, "[t]he pre-trial order supersedes the pleadings and becomes the governing pattern of the lawsuit." Pac. Indem. Co. v. Broward Cnty., 465 F.2d 99, 103 (5th Cir. 1972) (quotation marks omitted).[3] Moreover, we have recognized that under Federal Rule of Civil Procedure 15(b), "unpled issues which are tried with either the express or implied consent of the parties are to be treated as if they were raised in the pleadings." Cioffe v. Morris, 676 F.2d 539, 541 (11th Cir. 1982). Such implied consent is limited, however, to cases in which it is "evident." Id. at 541–42 (finding no implied consent for a theory of liability neither mentioned in the parties' contracts nor separately identified during the course of trial). "A district court has broad discretion to construe its own pretrial orders and we afford substantial deference to a trial court's decision to allow (or disallow) amendments to pretrial orders." Transamerica Leasing, Inc. v. Inst. of London Underwriters, 430 F.3d 1326, 1334 (11th Cir. 2005) (quotation marks omitted).

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

9

We conclude that the district court did not abuse its discretion in its choice of jury instructions or verdict form. To the contrary, the court reasonably concluded that Kearney's amended complaint and the parties' joint pretrial statement demonstrated that Kearney brought only one claim—that Auto-Owners engaged in bad faith—to the second trial. Indeed, in the parties' joint pretrial statement, which the Court adopted into its pre-trial Order, Kearney clearly delineated that his claim for relief stemmed solely from "Auto-Owners breach[] [of] the duty of good faith" it owed to Kearney. This statement, from which Kearney never retreated, thus bound the parties to litigate only the single issue of whether Auto-Owners engaged in bad faith—which could be *proven* by emphasizing its unfair claims practices—in its handling of Kearney's claims for UM payments. See Pac. Indem. Co., 465 F.2d at 103.

Nor, as Kearney argues, did the district court err in failing to recognize that Auto-Owners impliedly consented to litigate the separate theory of liabiltiy stemming from its unfair claims practices. To be sure, in the joint pretrial statement Kearney separately set forth a claim for *punitive* damages in which he mentioned unfair claims practices, but the punitive damages claim was dismissed by the district court and was therefore properly excluded from the jury instructions and verdict form. In any event, the Pretrial Order made clear that Kearney's

10

reference to unfair claims practices supported the figure of damages he sought upon proving the underlying bad faith claim, as opposed to an independent theory to establish primary liability.  For this reason, the district court did not abuse its discretion in determining that this allegation did not demonstrate "evident" consent to try separate theories of liability.  See Cioffe, 676 F.2d at 541–43.

Because Kearney only pled one theory of liability, the district court did not abuse its discretion in giving jury instructions and a verdict form that in turn limited the jury's consideration to that single theory.  Thus, the jury instructions and verdict form do not warrant a new trial.

### III.

Kearney argues next that the district court abused its discretion by excluding the expert testimony of an attorney, William Hahn.  Kearney claims that Hahn's testimony would have contributed to the jury's understanding of how an insurance company evaluates the measure of damages for claims like Kearney's.  This, Kearney submits, would have aided the jury's determination of whether Auto-Owners employed good faith in evaluating Kearney's damages.  Auto-Owners responds that Hahn's testimony was properly excluded because it was not relevant to an issue presented to the jury, and alternatively because it was cumulative of other testimony submitted by Kearney.

11

"We review the district court's exclusion of expert testimony for abuse of discretion." Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1191 (11th Cir. 2010). "We will defer to the district court's ruling unless it is manifestly erroneous." Id. (quotation marks omitted). Moreover, "[w]here an expert's testimony could mislead the jury by addressing factors which as a matter of law are not relevant to the issues in the dispute, then exclusion under Rule 403 is appropriate." U.S. v. 0.161 Acres of Land, More or Less, Situated in City of Birmingham, Jefferson Cnty., Ala., 837 F.2d 1036, 1042 (11th Cir. 1988).

The district court did not abuse its discretion in excluding Hahn's testimony. While the court acknowledged that Hahn was qualified to give an expert opinion on damage calculation generally, it also found that his testimony would not assist the jury in resolving the issues before them. Hahn's expert report stated that his testimony would establish that it was reasonable to assume a jury would award Kearney economic loss damages in excess of $50 million. But this testimony would not have been relevant, because a prior jury determination—in the first phase of the bifurcated trial—had already valued Kearney's damages at $35 million. Moreover, Hahn testified in his deposition that he did not possess knowledge of *how* Auto-Owners investigated Kearney's claim. Hahn's testimony bore much more closely to the issue already resolved in the first phase of the trial,

12

namely the amount of damages owed to Kearney. For this reason, it was not "manifestly erroneous" for the district court to exclude Kahn's testimony, insofar as this testimony may very well have proven more prejudicial than probative. Hendrix, 609 F.3d at 1191; 0.161 Acres of Land, 837 F.2d at 1042.

IV.

Finally, Kearney argues that the district court abused its discretion in denying him an award of costs for prevailing on his underlying claim. Kearney reasons that he was the prevailing party because he ultimately received the $5-million payment from Auto-Owners that constituted Count II of his initial complaint. In response, Auto-Owners argues that although it paid the $5 million to Kearney, Count II was ultimately resolved by Kearney's voluntary motion to dismiss the claim with prejudice. Auto-Owners submits that even though Kearney obtained some of the relief he sought, this fact does not render the district court's decision not to award costs an abuse of discretion.

"We review the factual findings underlying a district court's determination regarding prevailing party status for clear error." Head v. Medford, 62 F.3d 351, 354 (11th Cir. 1995). "Whether the facts as found suffice to render the plaintiff a 'prevailing party' is a legal question reviewed de novo." Church of Scientology

13

Flag Serv., Org., Inc. v. City of Clearwater, 2 F.3d 1509, 1513 (11th Cir. 1993).

"Finally, a district court's determination that a party has prevailed for purposes of awarding attorneys' fees is reviewed for abuse of discretion." Medford, 62 F.3d at 354.

We agree that the district court did not abuse its discretion by denying Kearney's request for fees as the prevailing party. As the Supreme Court has explained, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change [to warrant an award premised on prevailing party status]." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605, 121 S. Ct. 1835, 1840 (2001). Indeed, we have previously suggested that Kearney's voluntarily dismissal of Count II with prejudice is an action that might actually render Auto-Owners the prevailing party. See Matthews v. Crosby, 480 F.3d 1265, 1276 (11th Cir. 2007).[4] As such, we find no basis upon which to reverse the district court's conclusion that Kearney is not the prevailing party with respect to Count II.

_____

[4] Because Auto-Owners did not cross-appeal on this issue, however, we do not decide whether Auto-Owners is itself entitled to costs relating to Count II. See, e.g., Baby Buddies, Inc. v. Toys R Us, Inc., 611 F.3d 1308, 1313 n.11 (11th Cir. 2010). Rather, we point to Matthews merely to underscore the soundness of the district court's conclusion.

14

## V.

For all of these reasons, we affirm.

AFFIRMED.