# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10042

United States Court of Appeals
Fifth Circuit

**FILED**

June 1, 2017

Lyle W. Cayce
Clerk

RICHARD DONALD JONES, JR.,

> Plaintiff–Appellee
> Cross-Appellant,

versus

WELLS FARGO BANK, N.A.,

> Defendant–Appellant
> Cross-Appellee,

JPMORGAN CHASE BANK, N.A.,
  Formerly Known as Chase Bank of Texas National Association,

> Defendant–Appellee.

Appeals from the United States District Court
for the Northern District of Texas

Before SMITH and HAYNES, Circuit Judges, and JUNELL, District Judge.[*]
JERRY E. SMITH, Circuit Judge:

Wells Fargo Bank, N.A. ("Wells Fargo"), and JPMorgan Chase Bank, N.A. ("JPMorgan"), served as trustees of trusts of which Richard Jones, Jr., was a beneficiary. Jones sued both banks for breach of fiduciary duty. The

---

[*] District Judge of the Western District of Texas, sitting by designation.

No. 16-10042

district court dismissed all but one of Jones's claims, as to which a jury, finding a breach, awarded actual and exemplary damages. Wells Fargo seeks to set aside the verdict. On cross-appeal, Jones hopes to revive some of the claims that were dismissed. We find in favor of the banks on all issues.

I.

Jones is the grandson of Sweetie Boyle, who died in 1996. Until 2010, Jones had beneficial interests in four trusts that were funded with assets from Boyle's estate. JPMorgan and its predecessors in interest[1] served as trustee of three of the trusts from their creation until 2001, when Wells Fargo became the trustee after acquiring JPMorgan's trust department. Wells Fargo remained the trustee until the trusts were terminated on December 31, 2010. A fourth trust was created in 2003, with Wells Fargo serving as trustee until the trust's termination on December 31, 2010.

The litigation surrounding these trusts dates back to 1999, when JPMorgan filed two actions in state court. In the first, it sought a final accounting of Boyle's estate and a discharge from any further duties to the beneficiaries, including Jones. In the second, it sought to resign as trustee of the Boyle trusts. Jones filed counterclaims in both cases, alleging that JPMorgan had mismanaged the trusts in various ways. Both matters were ultimately dismissed.

Meanwhile, another case, brought in a different state court, concerned the Richard Donald Jones, Jr. 1994 Family Trust (the "House Trust"). In 1995, Jones asked the then-trustee, JPMorgan, to purchase a specific house in Bastrop County, Texas, and hold it in the House Trust for his benefit. The trustee purchased the house, and for a time Jones lived there. According to Jones,

---

[1] Hereinafter, we refer to JPMorgan and its predecessors in interest as "JPMorgan."

however, the house had so many flaws—including broken appliances, electrical issues, and water leaks that eventually caused a mold problem—that it was uninhabitable, and he had to move out. In 1999, JPMorgan sued the inspector it had hired to perform a pre-purchase house inspection (hereinafter the "House Suit").[2]

By the mid-2000s, it was clear that the House Trust did not have enough cash to pay for all of the necessary repairs. Wells Fargo concluded that Jones would be better off if the House Trust were dissolved. In 2007, Wells Fargo sued in state court to terminate the House Trust (hereinafter the "Termination Suit"). The state court ruled against Wells Fargo, keeping the trust alive.

At some point, Wells Fargo also concluded that it would lose the House Suit if it took the case to trial. Settlement negotiations fell apart. Wells Fargo tried to assign the claim to Jones, who refused to accept the assignment. In 2009, Wells Fargo nonsuited the House Suit.

The present case is four years old. In March 2013, Jones sued JPMorgan and Wells Fargo in state court on a number of claims. Wells Fargo and JPMorgan removed to federal court and moved for summary judgment. The district court dismissed all of the claims except for the claim that, by non-suiting the House Suit instead of proceeding to trial, Wells Fargo had breached its fiduciary duty to Jones, had breached the trust contract, and had violated the Texas Property Code.

The nonsuit claim went to trial. During his closing argument, Jones's lawyer introduced a new theory: that Wells Fargo had breached its fiduciary duty to Jones not by nonsuiting the case in April 2009, but by not nonsuiting it earlier, when it became clear that Wells Fargo would not prevail. Although

---

[2] JPMorgan also sued the sellers of the house, who were nonsuited early-on.

No. 16-10042

Jones had not pleaded that theory, Wells Fargo did not object during trial.[3] Wells Fargo instead raised its objection repeatedly in its post-trial briefing, including in its renewed motion for judgment JML, and its responses to Jones's motions to enter judgment and for leave to amend the complaint. The district court, however, ruled that, because Wells Fargo was on notice of this potential theory of liability, it had waived any objection to the adequacy of the pleadings by not objecting in its first motion for JML.

The jury seems to have relied on this new theory. It concluded that Wells Fargo had breached its fiduciary duty by nonsuiting and that the harm to Jones was the result of "gross negligence or malice." At the same time, the jury pegged Jones's likely recovery from the lawsuit, had it not been nonsuited, at "$0.00." The jury awarded Jones $171,780.57 in exemplary damages, $33,658.66 in attorneys' fees, and $4,440.94 in disgorged trustee fees. The court denied Wells Fargo's renewed motion for JML and granted Jones's motion for entry of final judgment.

Wells Fargo appeals. It claims that (1) the evidence was not sufficient to support a finding of breach of fiduciary duty, (2) the evidence was not sufficient to support a finding of actual damages, (3) the evidence was not sufficient to support a finding of exemplary damages, (4) the court erroneously shifted the burden of proof, (5) Wells Fargo did not waive its objection to Jones's introduction of his frivolous-litigation theory, (6) Jones should have presented expert testimony, and (7) Jones's claim is time-barred.

Jones cross-appeals. He asserts that the district court improperly dismissed several claims against Wells Fargo as well as his claim that

---

[3] Wells Fargo first became aware of this theory during argument on Wells Fargo's motion for judgment as a matter of law ("JML").

No. 16-10042

JPMorgan failed to convey mineral interests.

## II.

Wells Fargo asks this court to set aside a jury verdict. "Although we review denial of a motion for [JML] de novo, we note that 'our standard of review with respect to a jury verdict is especially deferential.'"[4] "[W]hen evaluating the sufficiency of the evidence, we view all evidence and draw all reasonable inferences in the light most favorable to the verdict."[5] Nevertheless, we will not sustain a jury verdict based on a "mere scintilla" of evidence.[6]

In Texas, "[t]he elements of a claim for breach of fiduciary duty are (1) a fiduciary relationship between the plaintiff and the defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or a benefit to the defendant as a result of the breach."[7] Both sides agree that a fiduciary relationship existed. Jones claims that Wells Fargo breached its fiduciary duty when it nonsuited the case instead of taking it to trial. In doing so, Jones says, Wells Fargo deprived him of a potential recovery and rendered any trust resources spent on attorneys' fees to have been wasted. Alternatively, Jones claims that Wells Fargo breached its duty by wasting trust resources litigating a meritless suit.

With respect to the claim actually tried—that nonsuiting the suit was a breach of fiduciary duty—Jones failed to persuade the jury of that theory, as

---

[4] *SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (per curiam) (quoting *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)).

[5] *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004) (citation omitted).

[6] *See Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1422 (5th Cir. 1997) (citation omitted).

[7] *Cluck v. Mecom*, 401 S.W.3d 110, 114 (Tex. App.–Houston [14th. Dist.] 2011, no pet.) (citations omitted).

evidenced by its conclusion that the lawsuit had a value of zero at the time of nonsuit. Tellingly, Jones refused to accept an assignment of the House Suit claim. Thus, the only theory on which the jury could have found a breach is the one not pleaded—that the failure to nonsuit sooner was the breach.

As for the new theory of liability presented to the jury in passing in the rebuttal closing argument, Wells Fargo was never on notice that that issue was being litigated, so it could not construct an appropriate defense. Indeed, at trial, after the close of Jones's case-in-chief, Jones asked the court to conform the pleadings to purported new evidence that Wells Fargo had filed a frivolous lawsuit, but the court rejected the request. In the presence of both parties, the court instructed Jones that it had "diligently tried to make sure that we try only . . . the nonsuit claim, and that's all that's going to the jury."[8] Nevertheless, the subsequent entry of judgment on this unpleaded claim effectively amended the complaint.

Post-trial amendments conforming the pleadings to the evidence are appropriate under Federal Rule of Civil Procedure 15(b) only if the defendant gives express or implied consent.[9] "Rule 15(b) recognizes that basic fairness

---

[8] Jones does not challenge this ruling on appeal. Even if he did, the district court did not abuse its discretion in denying Jones's request. *See Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 538 (5th Cir. 2012). As the court correctly noted, this case was carefully tried based on the nonsuit claim. The evidence relating to the frivolous-lawsuit claim was relevant to the nonsuit claim; thus, Wells Fargo had no reason to object to any such evidence, and failure to object does not demonstrate trial by consent. *See Moody v. FMC Corp.*, 995 F.2d 63, 65–66 (5th Cir. 1993). Moreover, Jones's request was unduly delayed and potentially prejudicial to Wells Fargo's defense. *See id.* Because the frivolous-lawsuit claim was closely related to Jones's nonsuit claim, Jones could have developed this theory of liability during discovery but instead raised it for the first time after resting his case.

[9] *Domar Ocean Transp., Ltd., Div. of Lee-Vac, Ltd. v. Indep. Ref. Co.*, 783 F.2d 1185, 1189 (5th Cir. 1986); *see also Deere & Co. v. Johnson*, 271 F.3d 613, 622 (5th Cir. 2001) ("[T]rial of unpled issues by implied consent is not lightly to be inferred under Rule 15(b), [and] such inferences are to be viewed on a case-by-case basis and in light of the notice demands of procedural due process." (second alteration in original) (quoting *Triad Elec. &*

entitles a defendant to notice, before trial, of who sued it and the nature of the claims being asserted against it."[10]   Wells Fargo could not have recognized, during trial, that the new unpleaded claim had entered the case because—after Jones had rested his case—the court expressly said the unpleaded claim was not part of the case and would not go to the jury.  Thus, Wells Fargo could not have consented to the unpleaded claim.[11]   Because Jones neither pleaded nor tried his case on the frivolous-lawsuit theory, and because Wells Fargo did not consent to a post-trial amendment, it was improper for the court to award damages against Wells Fargo on that theory.[12]

We do not reach the other issues Wells Fargo raises on appeal.  Instead, we proceed to examine the cross-appeal.

## III.

Jones claims that the district court erred by granting summary judgment to Wells Fargo on his claims that the bank misapplied insurance proceeds, double-billed trusts, improperly used trust funds to pay his adversaries' legal

---

*Controls, Inc. v. Power Sys. Eng'g, Inc.*, 117 F.3d 180, 193–94 (5th Cir. 1997))).

[10] *Domar*, 783 F.2d at 1189.

[11] The district court also concluded that Jones's first amended complaint put Wells Fargo on notice of the new claim.  The first amended complaint, however, repeatedly alleges that Wells Fargo breached its fiduciary duty by nonsuiting the House Suit.  At no point does the first amended complaint allege that filing the House Suit was also a breach of Wells Fargo's fiduciary duty.  Indeed, Jones argued, in both his post-trial motion for leave to amend and to the judge at trial, that he neither could have known about nor pleaded this theory before trial.

[12] *Presidio Valley Farmers Ass'n v. Brock*, 765 F.2d 1353, 1358 (5th Cir. 1985) (reversing an award of damages for joint and several liability because it was based on an unpleaded and unconsented-to issue); *see also Dawley v. NF Energy Saving Corp. of Am.*, 374 F. App'x 921, 924 (11th Cir. 2010) (per curiam) (reversing entry of judgment on an unpleaded and unconsented-to issue and rendering JML for defendant); *Deere*, 271 F.3d at 623 (reversing entry of judgment on an unpleaded and unconsented-to issue and remanding to enter a take-nothing judgment); *Domar*, 783 F.2d at 1189 (vacating post-trial amendment of unpleaded and unconsented-to claim).

No. 16-10042

fees, and failed to advise him of the possibility of combining trusts. Jones also maintains that the court improperly dismissed his claim that JPMorgan breached a fiduciary duty by failing to convey title to certain mineral interests in Texas and New Mexico.

The district court found that the claims Jones now seeks to revive are time-barred. In Texas, the limitations period for breach-of-fiduciary-duty claims is four years.[13] "In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur."[14] But sometimes an injury is "inherently undiscoverable"—that is, "it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence."[15] In those rare cases, a cause of action "does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury."[16] In addition, "a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct" until "the fact of misconduct becomes apparent."[17]

## A.

In May or June 2005, a lightning strike damaged the Bastrop County house. Jones had an insurance policy in his name, though the premiums were paid out of the House Trust. The insurance company sent Jones a check for

---

[13] *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5).

[14] *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (citation omitted).

[15] *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996) (citation omitted). This exception—the so-called "discovery rule"—has two elements: the injury must be "inherently undiscoverable" and the evidence must be "objectively verifiable." *Id*. at 4–7. Only the first element is relevant to our analysis.

[16] *Id*. at 4 (citation omitted).

[17] *Id*. at 8.

No. 16-10042

$25,988.28.  A Wells Fargo trust officer urged Jones to endorse the check to Wells Fargo, which he did.  Wells Fargo deposited the money into the House Trust in October 2005.  Jones says that he thought the money would either go toward repairing the house or be held in trust for his benefit.  A Wells Fargo trust officer testified in a deposition that after determining that the amount of cash held in the trust, including the newly deposited insurance proceeds, would not be sufficient to cover the cost of fixing the house's various problems, he told Jones that the proceeds would be held in trust for Jones's benefit.

Upon termination of the trust, at the end of 2010, Wells Fargo distributed the account balance to Jones.  By that point, the trust had a slightly negative cash balance; the trust's value was tied up in the house itself.

Jones claims that he should have received the insurance proceeds upon the House Trust's termination, in the form of cash or a cash equivalent.  As evidence that Wells Fargo misapplied the proceeds, he points to the fact that he did not receive $25,988.28 in cash upon the trust's termination, and he claims that the alleged misconduct came to light in 2009, less than four years before he sued in March 2013.  Wells Fargo counters that the claim accrued in 2005 or 2006, shortly after the proceeds were deposited into the House Trust.

The alleged misconduct should have been apparent to Jones more than four years before he sued.  He was in contact with Wells Fargo trust officers and received annual statements showing the balances and all activity in his trust accounts.  If he had noticed anything improper, he could have sued.  He eventually did, but by that point, seven and a half years had passed since the insurance proceeds had been deposited into the House Trust.  This claim is time-barred.

9

No. 16-10042

B.

In January 2005, Wells Fargo billed two trusts identical amounts for identical invoice numbers. Jones was the beneficiary of one of those trusts; Jones's niece was the beneficiary of the other. Jones suspects that Wells Fargo double-billed the trusts—that is, billed twice for the same service. Jones contends that there is a genuine dispute as to a material fact. Though he did not raise this claim in his first amended complaint, he did allude to it in response to Wells Fargo's second motion for summary judgment. Because "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court,"[18] we do not consider it.

C.

Jones alleges that Wells Fargo breached its fiduciary duty by using trust funds to pay for legal expenses it incurred in the Termination Suit and legal expenses JPMorgan incurred in other litigation against Jones. But in 2007, six years before this suit was filed, Jones received an annual account statement listing cash disbursements paid to a law firm for "termination of trust." That firm represented Wells Fargo in the Termination Suit. Thus, Jones was on notice of facts that should have led him to investigate the use of trust funds to pay his adversaries' legal fees. The district court found that this claim is time-barred, and we agree.

D.

Jones claims that Wells Fargo breached a fiduciary duty by failing to advise him that if he combined the House Trust and a second trust (the "1988

---

[18] *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citation omitted).

10

No. 16-10042

Trust"), the new trust might have had enough cash to pay for repairs to the Bastrop County house. He points out that a provision in the House Trust would have allowed it to be combined with another trust in certain circumstances. It is unclear whether the House Trust and the 1988 Trust could have been combined. In any event, Jones had access to the House Trust agreement containing the provision at issue. Any misconduct was readily apparent and not inherently undiscoverable.

## E.

Jones claims that JPMorgan breached a fiduciary duty by failing to convey title to certain mineral interests, owned by the Boyle trusts, in Reeves County, Texas, and Lea County, New Mexico. Because JPMorgan has not been the trustee of the Boyle trusts since 2001, any misconduct would have occurred more than a decade before Jones brought this claim. Jones contends that the claim is not time-barred because the alleged misconduct was "inherently undiscoverable." The district court dismissed the claim per Federal Rule of Civil Procedure Rule 12(c) for being untimely.

The alleged misconduct was not inherently undiscoverable. Jones has long been aware that JPMorgan may have failed to convey title to land owned by the Boyle trusts and that the Boyle trusts owned oil-and-gas producing properties in Reeves and Lea Counties. In 2000, Jones filed counterclaims in Texas state court alleging that JPMorgan had failed to convey title to oil-and-gas producing properties in the area. At the time, Jones was not aware of the specific properties at issue here, but he could have learned of their existence from public property records.[19] This claim is time-barred.

---

[19] *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998) (stating that information contained in publicly available records is not inherently undiscoverable).

No. 16-10042

IV.

The banks prevail on all issues before this court.  On the issues tried to the jury, the judgment is VACATED, and a judgment of dismissal is RENDERED.  With respect to Jones's issues on cross-appeal, the summary judgment is AFFIRMED.